[No. 36565.   Department Two.   January 17, 1963.]

THOMAS PETSCHL *et al., Plaintiffs and Relators,* v. CENTURY 21 CORPORATION, INC., *Defendant,* THE SUPERIOR COURT FOR KING COUNTY, *Solie M. Ringold, Judge, Respondent.*\*

*Jerry T. Haggarty,* for plaintiffs and relators.

*Skeel, McKelvy, Henke, Evenson & Uhlman,* by *Bradley F. Henke,* for respondent.

\*Reported in 377 P. (2d) 991.

HAMILTON, J.—Plaintiffs, in the Superior Court of King County, sought, by writ of mandamus, to compel defendant, Century 21 Corporation, Inc., to award to them, as Northwest Meat Purveyors Association, a corporation, upon the basis of their bid, a contract as exclusive meat suppliers at the Seattle World Fair.

At the conclusion of plaintiffs' evidence, the trial court granted defendant's motion to dismiss. Thereafter, the trial court entered findings of fact, conclusions of law, and judgment of dismissal.

Plaintiffs seek review of the trial court's action by writ of certiorari.

The findings of fact, to which no error is assigned, are, in pertinent parts:

"2. . . . Century 21 Exposition, Inc. is a Washington corporation organized under the provisions of R.C.W. Chapter 24.04, the specific authorization for such incorporation being set forth in R.C.W. 43.96.040. The articles of incorporation . . . contain specific authorization empowering the defendant to grant or sell rights, privileges and licenses. The State of Washington, through its Department of Commerce and Economic Development, has expended funds for the promotion of and the participation by the State of Washington in the Seattle World's Fair, the operation of which is the defendant's principal business purpose but the State of Washington has paid no monies to the defendant corporation.

"3. On or about January 26, 1961 the defendant caused to be directed to twelve firms engaged in the meat packing and wholesaling business, such firms representing substantially all of such firms in the Seattle area and including the Northwest Meat Purveyors Association, letters identical in content requesting bid proposals from the recipients for the right to be designated the exclusive wholesale supplier of miscellaneous fresh, canned and smoked meats and meat products to the private entrepreneurs holding food and beverage concessions on the fair grounds pursuant to licenses therefor granted by the defendant.

"4. That the bid proposals requested by the defendant in said letters of January 26, 1961 were to contain specific proposals by the bidders and were to be evaluated by defendant on the basis of the following factors:

"(a) A statement of policy governing the proposed domestic exclusive supply of miscellaneous meat products;

"(b) A detailed statement on bidder's organization and financial responsibility;

"(c) Cash bonus offered to defendant for the privilege of being the exclusive wholesale supplier of miscellaneous meat products;

"(d) Percentage of gross revenue from the wholesale merchandising of miscellaneous meat products which would be offered to defendant as a royalty in addition to the cash bonus;

"(e) Tie-in advertising offered for the promotion of the Seattle World's Fair;

"(f) Exhibit participation by supplier in the Seattle World's Fair;

"(g) Sponsorship of concession featuring designated supplier's products;

"(h) Underwriting participation by supplier in the financing of defendant;

"(i) Specific miscellaneous meat products proposed to be supplied;

"(j) Other factors for consideration by defendant; and that each of said letters of January 26, 1961 reserved the right in defendant to reject any and all proposals.

"5. In response to said letters of January 26, 1961 the defendant received two written bid proposals, that of Seattle Packing Company and that of Northwest Meat Purveyors Association. At the request of Northwest Meat Purveyors Association, the defendant did defer the awarding of any contract beyond the date indicated in the letters of January 26, 1961 to give to Northwest Meat Purveyors Association an opportunity to amend its bid proposal as originally submitted and the defendant did receive from Northwest Meat Purveyors Association two amendatory proposals dated March 10, 1961 and March 16, 1961, respectively.

"6. The proposal, as amended, submitted by Northwest Meat Purveyors Association to defendant contained the following points:

"(a) Payment to defendant by way of royalty of 4.5% of the gross wholesale meat business done or 50% of the net profits whichever might be the greater;

"(b) Payment to defendant as a cash advance on the above royalties of $15,000;

"(c) Arrangement through a competing meat packing

firm for a program of local and national tie-in advertising;

"(d) Note participation in the defendant's underwriting program in the amount of $25,000;

"(e) Rental of exhibition space in an amount to be negotiated.

"7. The original and only proposal as submitted by the bidder to whom the contract was ultimately awarded contained the following points:

"(a) Payment to the defendant by way of royalty of 2% of the gross wholesale meat business done;

"(b) Payment to the defendant as a cash advance on the above royalty of $20,000;

"(c) Tie-in advertising through bidder's established advertising program on local and national basis;

"(d) Note participation in defendant's underwriting program in the amount of $25,000;

"(e) Rental of exhibition space in the amount of 1,500 square feet.

"8. The officers and employees of defendant responsible for the evaluation and awarding of a contract for the exclusive right to sell meats and meat products to concessionaires on the fair site considered the proposal of Northwest Meat Purveyors Association and both amendments thereto and did evaluate both bids received in the light of each factor listed in the letters of January 26, 1961.

"9. At the time the contract was awarded by defendant, the percentage upon which the royalty ultimately to be paid to defendant was to be based was not considered by the defendant's officers as the most important factor in evaluating the bids received."

The conclusions of law, to each of which plaintiffs have assigned error, are as follows:

"1. If the defendant corporation were to be characterized as an agency of the State of Washington, R.C.W. Chapter 43.19 does not govern the method by which an agency of the State of Washington shall grant licenses, concessions or any other rights for consideration.

"2. If the defendant corporation were to be characterized as an agency of the State of Washington, the letting of the contract in question by the defendant was not fraudulent nor did it involve arbitrary or capricious action on the part of the defendant or its officers and employees.

"3. The defendant corporation, Century 21 Exposition, Inc., is a private, nonprofit corporation with all of the rights,

liabilities and incident duties of any other corporation formed under the provisions of R. C. W. Chapter 24.04 and is not a governmental agency of the State of Washington."

In order to consider plaintiffs' assignments of error it is necessary to review briefly the statutory background of the defendant corporation.

RCW 43.96.010, 43.96.020, 43.96.040, and 43.96.050 set forth the purpose, organization, and function of the World Fair Commission as follows:

"The 1909 world fair and exposition known as the Alaska-Yukon-Pacific.Exposition held in Seattle redounded in large measure to the benefit of the state of Washington by attracting thousands of visitors and promoting the state and its large variety of products and industries and its great trade potential. The year 1959 will mark the fiftieth anniversary of this exposition. There is wide interest in the state in the holding of another such world fair to dramatize the recent great developments and accomplishments in this state as well as its future opportunities. The feasibility and desirability of such a world fair and the proper participation of the state of Washington in such a fair should be thoroughly studied before the 1957 regular session of the legislature." RCW 43.96.010.

"There is created the world fair commission to consist of fifteen members to be selected as follows: Five by the governor, of whom one shall be designated by the governor as chairman of the commission, four by the president of the senate and four by the speaker of the house of representatives, to serve until April 30, 1963, the lieutenant governor and one member of the Seattle City Council, to be appointed by the Seattle City Council. The commission shall serve without compensation and shall meet at such time as it is called by the governor or by the chairman of the commission." RCW 43.96.020.

"The members of the world fair commission are empowered to form a nonprofit corporation under the provisions of chapter 24.04 RCW. The members of the corporation shall be members as long as they are members of the commission or until their successors are appointed and qualify." RCW 43.96.040.

"In addition to powers prescribed by chapter 24.04 RCW, the world fair commission through the corporation formed by its members shall stage a world fair within the state

of Washington during the year 1960 or as soon thereafter as deemed practical by the commission and shall dramatize the history, accomplishments, and resources of the state by suitable exhibits." RCW 43.96.050.

RCW 24.04.080, specifying powers of corporations formed under RCW 24.04, provides:

"Corporations formed under this chapter shall have power of succession by their corporate name for the time specified in their respective articles of incorporation or, if no such time of existence is specified, then perpetually, and in such name may sue and be sued in any court, may make and use a common seal and alter the same at pleasure, may receive gifts and devises, may purchase, hold and convey real and personal property, as the purposes of the corporation may require, may appoint such subordinate agents or officers as the business may require, may demand assessments of members and sell or forfeit their interests in the corporation for default with respect to any lawful provision of the bylaws, may enter into any lawful contracts and incur obligations essential to the transaction of its affairs for the purpose for which it was formed, may borrow money and issue notes, bills or evidence of indebtedness, and may mortgage its property to secure the same as its bylaws may provide, and, generally, may do all things necessary or proper to carry out the purpose of its creation."

The defendant corporation was formed on October 14, 1957. Named in the articles of incorporation were some 44 trustees. The articles of incorporation, among other things, provided:

"ARTICLE I
"*Purpose*
" . . .

"This corporation is formed for the purpose of staging a World Fair at a time to be fixed by the Washington State World Fair Commission. . . .
" . . .

"ARTICLE III
"*Powers*
"This corporation shall have the power:
"To purchase, apply for, and otherwise acquire, sell, transfer, and otherwise dispose of, mortgage, and otherwise encumber franchises, easements, rights, privileges, licenses,

trademarks, trade names, patents, inventions, improvements, and processes:

"To purchase, lease from others, and otherwise acquire, sell, convey, transfer, lease to others, and otherwise dispose of, mortgage, or otherwise encumber real or personal property;

"To receive gifts, bequests and grants from individuals, partnerships, corporations, foundations and others;

"To enter into contracts for services with individuals or other corporations;

"To borrow or lend money to or from individuals or corporations in any amount necessary to further the corporate purposes;

"To operate facilities for the safety, comfort, convenience, and entertainment of the public, and those associated with this venture;

"To do all things necessary and proper in order to carry out the purpose for which the corporation has been formed."

It was in pursuit of the objectives so outlined by statute and corporate articles that the contract in question was executed.

Plaintiffs, by their assignments of error to the trial court's conclusions of law, assert, in essence: (1) RCW 43.19, passed by the legislature in 1959, governs awarding of this contract; (2) the plaintiffs submitted the better bid; and (3) defendant corporation is a governmental agency or instrumentality.

For purposes of the ensuing discussion we will assume, as the trial court did, that defendant corporation is a public or quasi-public corporation and as such is an agent of the state.

The pertinent portions of RCW 43.19 are as follows:

"The director of general administration shall appoint and deputize an assistant director to be known as the supervisor of purchasing, who shall have charge and supervision of the division of purchasing." RCW 43.19.180.

"The director of general administration, through the division of purchasing, shall:

"  .  .  .

"(2) Purchase all material, supplies and equipment needed for the support, maintenance, and use of all state institutions, colleges and universities, the offices of the

elective state officers, the supreme court, the administrative and other departments of state government, and the offices of all appointive officers of the state: . . . *Provided further*, That primary authority for the purchase of materials, supplies and equipment for resale to other than state agencies shall rest with the state agency concerned;" RCW 43.19.190.

"Insofar as practicable, all purchases and sales shall be based on competitive bids and a formal sealed bid procedure shall be used as standard procedure for all purchases and contracts for purchases and sales executed by the director of general administration through the division of purchasing and under the powers granted by RCW 43-.19.190 through 43.19.1939: . . ." RCW 43.19.1906.

"When purchases are made through competitive bidding, the contract shall be let to the lowest responsible bidder, . . ." RCW 43.19.1911.

The question presented by plaintiffs' first assignment of error is whether the contractual granting of the exclusive privilege, license, or concession here concerned, by a public agency, falls within the spirit, intent, or purpose of the foregoing statute.

We have heretofore, in common with the weight of authority, recognized that, in the absence of constitutional, statutory or charter requirement, authorized state or municipal contracts need not be let under competitive bidding. *Tumwater v. Pix*, 18 Wash. 153, 51 Pac. 353; *Malette v. Spokane*, 77 Wash. 205, 137 Pac. 496; *Reiter v. Chapman*, 177 Wash. 392, 31 P. (2d) 1005, 92 A. L. R. 828; *Dalton v. Clarke*, 18 Wn. (2d) 322, 139 P. (2d) 291; 10 McQuillin, Municipal Corporations (3d ed.) § 29.31, p. 272; 43 Am. Jur., Public Works and Contracts § 24, p. 765.

We are cognizant of the fact that a requirement that public contracts be let only after competitive bidding constitutes a sound rule of policy. *Dalton v. Clarke, supra.* We are also aware, as pointed out in plaintiffs' briefs, of the wholesome motivations inducing the legislative enactment of RCW 43.19.

We cannot, however, conceive, when we place RCW 43.96 side by side with RCW 43.19, that the legislature

intended to superimpose the requirements of the latter upon the former, in so far, at least, as a letting of this type of contract.

RCW 43.19 deals, basically, with the expenditure of public funds and state-owned assets, by purchase and sale, for the use and benefit of state government. Here, the defendant corporation was engaged in the promotion of financing, and the procurement of service, for the benefit and use of potential patrons of the Seattle World Fair and its concessionaires. It was not, in this transaction, expending public funds, nor disposing of tangible, inventoried state-owned property.

In authorizing the creation of the defendant corporation, in RCW 43.96, the legislature was patently aware of the provisions and import of RCW 24.04. It was also aware of the breadth, intricacy, and potential complications of the mission it entrusted to the defendant corporation.

Had the legislature intended to directly inject the state, through the office of the Director of General Administration, into the responsibilities of the defendant corporation, involving, among others, the promotion of financing, exhibits, amusements, etc., through the medium of establishing and dispensing temporary and intangible licenses, privileges, and concessions, it could have so stated in very simple terms. This it did not do.

We conclude, as did the trial court, that the provisions of RCW 43.19 do not apply to the transaction in question.

Plaintiffs by their second assignment of error challenge the granting of the contract in question to their competitor.

Plaintiffs do not here contend, nor is there evidence in the record which would support a finding, that the officers and employees of defendant corporation acted fraudulently in awarding the contract as they did. On the other hand, defendant does not question, nor does the record indicate, that plaintiffs were lacking in good faith, integrity or ability to carry out the proposals they incorporated in their bid.

The fundamental question under this assignment of er-

ror is whether or not the defendant acted arbitrarily or capriciously in selecting plaintiffs' bidding competitor.

■ ■ The rule of law to be applied in answering the question is, as pointed out by defendant, succinctly stated in *Lillions v. Gibbs,* 47 Wn. (2d) 629, 633, 289 P. (2d) 203, as follows:

"It is well established that courts will not review, except for clear abuse, the discretion vested in public officers. *Metzger v. Quick,* 46 Wn. (2d) 477, 483, 282 P. (2d) 812 (1955), and cases cited. If the action of the board, in and of itself, was not arbitrary and capricious, it follows that this court will not interfere.

" . . .

"Arbitrary and capricious action of administrative bodies means willful and unreasoning action, without consideration and in disregard of facts or circumstances. *Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached. In re Buffelen Lbr. & Mfg. Co.,* 32 Wn. (2d) 205, 208, 201 P. (2d) 194 (1948), and case cited." (Italics ours.)

The record before us indicates that at the time the contract was awarded, factors such as immediate financial support, local and national advertising, rental of exhibition space, and maintaining standard wholesale prices to concessionaires, were among the factors considered important in evaluating the bids. The trial court found as a fact that the royalty ultimately to be paid to defendant was not considered as the most important factor in evaluating the bids received. This finding is unchallenged.

Upon the record before us there is room for two opinions as to the merits of the respective bids. We conclude that it cannot be said defendant's officers acted arbitrarily and capriciously.

Plaintiffs' final assignment of error challenges the trial court's conclusion of law to the effect that defendant corporation is a private corporation, as distinguished from a public or quasi-public corporation. As heretofore indicated we have, in considering plaintiff's first two assign-

ments of error, assumed, arguendo, that defendant acted as a public corporation and as an agency of the state.

In view of our conclusions upon the preceding assignments of error, we do not deem it necessary, to a disposition of this appeal, to decide whether, in law or in fact, the defendant corporation is a public, quasi-public or private corporation, or whether it acted as an agent or instrumentality of the state.

The judgment of dismissal is affirmed.

HILL, DONWORTH, FINLEY, and HUNTER, JJ., concur.