[No. 60871-7.   En Banc.   October 6, 1994.]

ASSOCIATED GENERAL CONTRACTORS OF WASHINGTON, ET AL, *Appellants*, v. KING COUNTY, ET AL, *Respondents*.

*Short Cressman & Burgess,* by *Paul R. Cressman, Jr.,* and *Margaret S. Easton,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Quentin Yerxa, Senior Deputy,* for respondent King County.

UTTER, J. — Plaintiff Associated General Contractors (AGC) challenges a trial court order entering summary judg-

ment in favor of Defendant King County on two motions. In one motion, AGC sought summary judgment in the form of declaratory and injunctive relief, arguing a county ordinance permitting King County to employ county employees to perform certain public works violates a King County Charter provision and state statutes requiring King County to hire independent contractors for the performance of all public works. In a second motion, King County also moved for summary judgment, arguing that both King County's use of county labor in accordance with the ordinance and the ordinance itself are valid. The Snohomish County Superior Court denied AGC's motion and granted King County's cross motion for summary judgment. We agreed to direct review and now reverse the trial court's determination that the issue was properly decided on summary judgment and remand for further factual development.

BACKGROUND

It is undisputed that since 1988 King County has been completing various public works with the use of in-house labor, rather than by hiring independent contractors. Its use of in-house employees is currently governed by ordinance 10489, which provides in relevant part:

> Construction of public buildings and works, other than county road projects having a value of less than twenty-five thousand dollars, shall be performed by independent contractors.
>
> . . . [T]he alteration, renovation or improvement (other than ordinary maintenance) of public buildings and works may be performed or accomplished by King County forces when the county determines it is necessary or advisable to do so, but subject to the publication requirements prescribed by RCW 39.04.020.

Clerk's Papers, at 224. In an action for injunctive and declaratory relief, AGC challenged this practice and sought summary judgment, contending RCW 36.32 and section 815 of the King County Charter each require King County to hire independent contractors to perform all public works and arguing ordinance 10489 is illegal, null, and void because it permits King County to use in-house labor for the perform-

ance of some public works. Clerk's Papers, at 3-13 (complaint); Clerk's Papers, at 74-96 (Plaintiff's motion for partial summary judgment). King County filed a Response and Cross Motion for Summary Judgment, arguing it is not required to hire independent contractors to perform public works but, rather, may use in-house labor so long as it complies with ordinance 10489. Clerk's Papers, at 191-219.

Granting King County's motion for summary judgment and denying AGC's motion for summary judgment, the trial court concluded neither the charter nor the statutes cited by AGC prohibit King County from performing public works with in-house labor. Clerk's Papers, at 368-74. We accepted AGC's request for direct review of the trial court order.

### ANALYSIS

RCW 39.04.010 and RCW 36.32.120(1) lie at the core of this controversy. RCW 39.04.010 provides that "public work":

> shall include all work, construction, alteration, repair, or improvement other than ordinary maintenance, executed at the cost of . . . any municipality, . . ..

It defines "municipality" to include:

> every . . . county . . . which is authorized by law to require the execution of public work . . ..

RCW 39.04.010. RCW 36.32.120(1) confers on King County the statutory authorization to provide for the erection and repair of public buildings:

> The legislative authorities of the several counties shall . . .
>
> . . . [p]rovide for the erection and repairing of court houses, jails, and other necessary public buildings for the use of the county;

Thus, pursuant to these various provisions, King County is a municipality which is responsible for public works.

At issue in this case is the manner in which King County may legitimately execute public works. Relying on section 815 of the King County Charter, RCW 39.04 and RCW 36.32, AGC claims King County must perform public works through independent contractors. King County argues it is not required to hire independent contractors to perform all

public works, but rather may rely, when it complies with the requirements delineated by ordinance 10489, on in-house labor.

## I

We first examine AGC's claim that section 815 of the King County Charter forbids King County from employing county labor to perform any public work. Section 815 of the charter states:

> The *construction* of all public buildings and works shall be performed by independent contractors; except that county road projects having a value of less than twenty-five thousand dollars may be performed by county employees.

(Italics ours.) As noted above, RCW 39.04.010 defines public works broadly to include a variety of works, including "construction". Although the charter requires most types of "construction" to be performed by independent contractors, it does not require *all* public works to be performed by independent contractors. Compliance with ordinance 10489, which language is virtually identical to the charter, constitutes compliance with the charter. We therefore reject AGC's contention that section 815 forbids King County from employing in-house labor to perform public work.

## II

■ AGC's next claim is based on RCW 39.04. Although AGC cites RCW 39.04.150 and RCW 39.04.155 on appeal to support its claim that counties must enter into contracts for all public works, the effect of these provisions was not specifically raised until the appeal. Because we do not generally consider on appeal issues not briefed or argued in the trial court, *State v. Riley*, 121 Wn.2d 22, 846 P.2d 1365 (1993), we decline to pass on these claims.

## III

■ A final argument made by AGC is premised on RCW 36.32. AGC refers to RCW 36.32.250 as one source of support for its contention that RCW 36.32 requires counties to contract for all public works. RCW 36.32.250 provides:

> No contract for public works may be entered into by the county legislative authority or by any elected or appointed officer of the county until after bids have been submitted to the county upon specifications therefor.

RCW 36.32.250 neither itself purports to be, nor recognizes the existence elsewhere of, a statutory mandate that all public works must be performed by contract. It merely governs the award of contracts, *if a municipality chooses to enter into a contract for a public work*. We therefore reject AGC's contention that RCW 36.32.250 operates as a complete bar to in-house performance of public works.

■■ AGC also asserts "RCW 36.32.240 provides that a county . . . shall contract on a competitive basis for all public works . . .". (Italics omitted.) Br. of Appellants, at 5. We cannot agree. RCW 36.32.240 provides:

> In any county the county legislative authority *may* by resolution establish a county purchasing department. *In each county which exercises this option*, the purchasing department shall contract on a competitive basis for all public works . . ..

(Italics ours.) RCW 36.32.240. We cannot read this manifestly optional language to require counties which have not opted to establish a purchasing department to contract on a competitive basis for all public works.

The legislative history of this provision provides additional support for recognizing the optional language of RCW 36.32.240. RCW 36.32.240 was originally enacted in 1945. At the time it contained the following requirement:

> In any Class A county, the Board of County Commissioners shall contract on a competitive basis for all public works . . ..

Laws of 1945, ch. 61, § 1. A similar provision adopted in 1949 provided:

> In any Class A and First Class county, the Board of County Commissioners shall contract on a competitive basis for all public works . . ..

Laws of 1949, ch. 33, § 1. The Attorney General has interpreted the 1949 provision to require class A and first class counties to contract on a competitive bid basis for all public works. AGO 235 (1954). Although attorney general opinions

are not controlling on us, they are persuasive authority. *Bowles v. Department of Retirement Sys.*, 121 Wn.2d 52, 847 P.2d 440 (1993).

In 1961, the Legislature began permitting all counties to establish a purchasing department, but retained the requirement that counties of a certain size population and larger contract for all public works:

> In any county the board of county commissioners *may* by resolution establish a county purchasing department and thereafter such department shall contract on a competitive basis for all public works . . . *Provided, That in all class AA or class A counties or in any county of the first class it shall be mandatory that a purchasing department be established.*

(Italics ours.) Laws of 1961, ch. 169, § 1.

Notwithstanding the longstanding requirement on counties of a certain size and larger to contract on a competitive basis for all public works, the Legislature in 1991 eliminated the mandatory language from the statute:

> In any county the ((board of)) county ((commissioners)) legislative authority may by resolution establish a county purchasing department ((and thereafter such)). The purchasing department shall contract on a competitive basis for all public works . . . PROVIDED, That in all class AA or class A counties or in any county of the first class it shall be mandatory that a purchasing department be established . . ..

Laws of 1991, ch. 363, § 57. The optional nature of this clause was strengthened in 1993 when the Legislature modified the statute as follows:

> In any county the county legislative authority may by resolution establish a county purchasing department. *In each county which exercises this option,* the purchasing department shall contract on a competitive basis for all public works . . ..

Laws of 1993, ch. 198, § 5.

Another facet of legislative history supports our conclusion RCW 36.32.240 does not require all counties to hire independent contractors to perform public works. When Substitute Senate Bill 5048 containing the 1993 version of RCW 36.32.240 was originally introduced to the House, the bill also sought to amend RCW 36.32.245, a provision gov-

erning a county's purchase of materials, in a fashion similar to the amendment to RCW 36.32.240:

> No contract for the purchase of materials, equipment, or supplies ((<del>, or services</del>)) may be entered into by the county <u>legislative authority or by any elected or appointed officer of the county <u>which exercises the option of creating a purchasing department</u> until after bids have been submitted to the county.

Substitute Senate Bill 5048 53rd Legislature (1993) (House Comm. on Local Gov't File). However, whereas the Legislature ultimately adopted the additional language "which exercises the option of creating a purchasing department" as part of RCW 36.32.240, the House successfully sought an amendment to the original bill, striking such additional language from RCW 36.32.245. The committee on local government commented on the effect of eliminating this language on RCW 36.32.245 as follows: "Retains requirement that all counties must use competitive bidding for purchases of materials, equipment, and supplies". This act of amending the Senate's proposed amendment to RCW 36.32.245 — combined with the absence of an amendment to the similar proposed amendment to RCW 36.32.240 — reflects the Legislature's recognition that the 1993 version of RCW 36.32.240, adopting the Senate's proposed amendment, was not intended to preserve a requirement that all counties contract on a competitive basis for all public works. For the reasons just discussed, we conclude RCW 36.32.240 does not require a county which has not established a purchasing department to contract for all public works.

Our holding in no way alters the fact the statute *is* mandatory for counties which have elected to establish a purchasing department:

> In any county the county legislative authority may by resolution establish a county purchasing department. In each county which exercises this option, the purchasing department *shall* contract on a competitive basis for all public works . . ..

RCW 36.32.240. In addition to the statutory language which dictates this conclusion, the history of the 1993 version of RCW 36.32.240 supports this conclusion as well. As noted,

the committee on local government characterized the effect of eliminating the language "which exercises the option of creating a purchasing department" from RCW 36.32.245 as follows: "Retains requirement that *all* counties must use competitive bidding for purchases of materials, equipment, and supplies". (Italics ours.) The Legislature thus appears to have believed the introduction of such language would reduce the number of counties required to use competitive bidding for purchases from "all" to only "some". Implicit in the recognition that some counties would still be required to use the competitive bidding system for purchases is the understanding that those counties which have elected to establish a purchasing department are subject to the general requirement to use competitive bidding for purchases. By analogy and based on the text of the statute, we conclude counties which have established a purchasing department are generally required, pursuant to RCW 36.32.240, to hire independent contractors for the performance of all public works.

King County advances three principal arguments to dissuade us from concluding that counties with a purchasing department must always hire independent contractors. None of these arguments is persuasive.

First, King County cites a number of cases, including *Petschl v. Century 21 Corp.*, 61 Wn.2d 276, 377 P.2d 991 (1963); *Dalton v. Clarke*, 18 Wn.2d 322, 139 P.2d 291 (1943); *Malette v. Spokane*, 77 Wash. 205, 137 P. 496 (1913); *Tumwater v. Pix*, 18 Wash. 153, 51 P. 353 (1897). Since these cases involved statutory schemes qualitatively different from the scheme currently at issue, they are unhelpful to resolving the issue before us.

Second, King County argues RCW 39.04.020 recognizes the inherent authority of all counties, including those with a purchasing department, to execute public works by a means other than by contract. RCW 39.04.020 provides:

> If the . . . *municipality* shall determine that it is necessary or advisable that such [public] work shall be executed by *any means other than by contract* . . . and it shall appear by such

estimate that the probable cost of executing such work will exceed the sum of fifteen thousand dollars, then the state or such municipality shall at least fifteen days before beginning work cause such estimate, together with a description of the work to be published once . . . in or as near as possible to that part of the county in which such work is to be done . . ..

(Italics ours.) RCW 39.04.020. King County asks us to infer from this statute that counties possess the authority to execute public works by a means other than by contract, including by use of in-house labor.

Even if we accepted King County's argument that this provision reflects a right of municipalities to execute works with in-house labor, this interpretation would produce a conflict between two statutory schemes. One scheme, RCW 39.04, permits the *inference* of a right of municipalities to execute works with in-house labor. RCW 39.04.020. The inference is made possible largely by the absence of any statutory provision explicitly requiring municipalities to contract for all public works. The other scheme, RCW 36.32.240, expressly requires counties (a specific type of municipality) which have established a purchasing department to contract for all public works. Given this conflict, we must respect the express statutory language of RCW 36.32.240.

Finally, in its Brief of Respondents, King County argues in essence that even if RCW 36.32.240 requires any class of counties to contract for all public works by a bidding process, King County's status as a home rule county under Const. art. 11, § 4 exempts it from the general statutory requirement. This argument was not raised before the trial court. As indicated earlier, we generally decline to reach issues not raised below, even issues of constitutional dimension, *Robinson v. Peterson*, 87 Wn.2d 665, 675, 555 P.2d 1348 (1976). Accordingly, we do not decide the issue of whether, if a conflict exists between RCW 36.32.240 as applied to King County and actual King County practices, the statute or King County practices should prevail.

We affirm the trial court's order denying AGC's motion for summary judgment. However, we reverse the trial court's determination that King County is entitled to use in-house

labor as a matter of law. Because the issue whether a county has a purchasing department is a genuine issue of material fact which was not resolved by the trial court, we remand for a determination whether King County does indeed have a purchasing department and for further proceedings consistent with this decision. *See* CR 56(c) (summary judgment is only proper where there is no genuine issue of material fact). If King County has *not* established a purchasing department, it may use in-house employees for the execution of public works. We recognize this result appears to draw an artificial distinction between those counties which have established a purchasing department and those which have not. However, because courts may not create legislation in the guise of interpreting it, *Progressive Animal Welfare Soc'y v. UW*, 114 Wn.2d 677, 790 P.2d 604 (1990), we decline to eliminate the legislatively created distinction by judicial fiat.

ANDERSEN, C.J., and BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.