[No. 37386-2-I.   Division One.   September 9, 1996.]

DICK ENTERPRISES, INC., ET AL., *Appellants*, v. KING COUNTY, *Respondent*.

*Dale R. Ulin*, for appellants.

*Norm Maleng, Prosecuting Attorney*, and *Kendall H. Moore, Deputy*; and *Paul R. Cressman, Jr.*, and *Short, Cressman & Burgess*, for respondent.

BAKER, C.J. — King County awarded the construction contract for its new Regional Justice Center to the lowest bidder, Hensel Phelps Construction Co. The second lowest bidder, Dick/Cree Joint Venture, protested that Hensel Phelps's bid did not meet set-aside goals for minority and women business enterprises (MWBEs), and that the County knew about this flaw when it accepted the bid. Dick/Cree sued to enjoin the contract's performance, but the trial court dismissed its claim, citing the rule that a disappointed bidder may not sue for damages for violations of the competitive bidding process once a contract is awarded. We hold that the policy considerations behind this rule also apply when the bidder requests injunctive relief. Finding no merit in the remaining issues, we affirm.

## FACTS

Before the County awarded the contract, Dick/Cree formally protested Hensel Phelps's bid, arguing that it was nonresponsive because, among other things, it listed multiple MWBE subcontractors for the same work. The County rejected the protest, finding that the alleged errors

did not render the bid nonresponsive. Dick/Cree moved to temporarily restrain the formation of a contract, but the trial court found temporary relief unwarranted. Dick/Cree did not immediately appeal the denial of the temporary restraining order, and the County and Hensel Phelps signed a contract the next day. At the preliminary injunction hearing, the trial court allowed Dick/Cree to amend its complaint to request an injunction against performance. The court later granted the County's motion to dismiss with prejudice, ruling that Dick/Cree lacked standing.

## BIDDER STANDING

■ Competitive bidding statutes exist to protect the public purse from the high costs of official fraud or collusion. The bidder's interest in a fair forum is secondary. Therefore, even where the wrongful award of a contract violates a bidder's interest in a fair forum, the bidder may not sue for damages. To allow damages would violate the public interest by subjecting taxpayers to further penalties when they are already injured by paying too high a price under an illegal contract.[1] The aggrieved bidder may instead sue to enjoin the award of an illegal contract, because the public benefits from preventing a contract for an excessive amount.[2] A taxpayer may also sue to enjoin the execution or performance of a wrongful public contract that would increase the tax burden.[3]

■ No case has addressed whether the policy of protecting the public treasury permits a bidder to sue to stop performance once a contract is signed. Bidder injunctions against performance of public contracts would adversely affect the public interest by increasing expense to the taxpayers. We therefore hold that the purposes of the com-

---

[1]*Peerless Food Prods., Inc. v. State*, 119 Wn.2d 584, 591, 835 P.2d 1012 (1992).

[2]*Peerless*, 119 Wn.2d at 591, 596.

[3]*Times Publ'g Co. v. City of Everett*, 9 Wash. 518, 520, 37 P. 695 (1894); *Mottner v. Town of Mercer Island*, 75 Wn.2d 575, 579-80, 452 P.2d 750 (1969).

petitive bidding laws are best carried out by restricting such suits to plaintiffs with taxpayer standing.

■ As a matter of public policy, the courts may refuse to recognize a cause of action where the lawsuit would work against the purposes of the underlying statute.[4] Dick/Cree argues that recognizing standing to protect a bidder's right to a fair forum does not undermine the financial policies behind the competitive bidding statutes because the assurance of a fair forum attracts nontaxpayer bidders, increasing competition and lowering prices. It also asserts that private bidders are inherently watchdogs of the public interest who are better equipped to combat injustice in the bidding process than the average taxpayer. On the other hand, the costs of rebidding and delay would in many cases far outweigh the financial harm caused by a fraudulent or collusive agreement. This is especially true where, as here, the challenged contract has been awarded to a company whose bid was over one half million dollars lower than the next lowest bidder's.

Even where an illegal contract increases expense to the public, bidder injunctions against performance are not the proper way to vindicate public rights. Private suits are motivated by the bidder's desire to rebid and improve its chances to obtain an award. The best way to ensure that lawsuits are brought in the public interest is to restrict standing to those whose rights are at stake—the taxpayers.

■ Nor is the public interest in promoting MWBEs a legitimate basis for bidder standing in this case. We acknowledge the potential for harm to important public policies other than protection of the public purse when the bidding process is abused. Nevertheless, because the competitive bidding statutes are specifically designed to protect taxpayers from undue *financial* burden, the vindication of other public policies is not a proper reason to allow a bidder injunction when a contract allegedly

---

[4]*See Peerless*, 119 Wn .2d at 591, 596-97.

violates those statutes. Nor are the rights of MWBEs an interest of the bidder for which it could pursue a cause of action. Protection of such rights are best left to the directly affected parties.

■ We further acknowledge that a fair forum for bidders is an important concern as it encourages larger numbers of competitors to bid and lowers costs to the public. A level playing field also protects companies' investments in preparing their bids.[5] Nevertheless, where public and private interests conflict under the competitive bidding laws, the public interest must prevail. While using contract formation as a bright-line cutoff point for bidder standing necessarily limits the protection of bidder rights, the bidder is not without a remedy: It may seek an injunction before contract formation. If the contractor fails to obtain a temporary restraining order and the parties threaten to enter into a contract, it can immediately appeal the trial court's decision.

We distinguish two cases seemingly supporting a bidder's standing to enjoin performance. First, the only case apparently allowing standing did not address the issue. In *Platt Elec. Supply, Inc. v. City of Seattle*[6] the city improperly allowed a contractor to revise its bid amount and replace Platt as lowest bidder. After the award of the contract, Platt sued to enjoin performance. The trial court denied injunctive relief, finding that the city acted within its discretion. We disagreed and reversed. While the existence of standing was implicit in our disposition on the merits, the issue was neither raised nor discussed.[7] Other Washington cases concerning injunctive relief either do

[5]*See Gostovich v. City of W. Richland*, 75 Wn.2d 583, 587, 452 P.2d 737 (1969).

[6]16 Wn. App. 265, 555 P.2d 421 (1976), *review denied*, 89 Wn.2d 1004 (1977).

[7]*See also William F. Wilke, Inc. v. Department of Army*, 485 F.2d 180, 181-82 (4th Cir. 1973) (addressing a bidder's motion for an injunction against performance without a discussion of standing).

not involve a request to enjoin performance, or are based on taxpayer standing.[8]

■ Second, the Supreme Court suggested the possibility of a bidder suit to enjoin performance in *Peerless Food Prods., Inc. v. State* after resolving the case on different grounds:[9]

> Bidders who are mistakenly or wrongfully denied contracts have every incentive under our current rule to move quickly in seeking an injunction. If a protest is a prerequisite to court action, then bidders may seek temporary restraint on performance of the contract in question. . . . Bond requirements upon bidders seeking to enjoin performance of a contract by a third party are not an unfair burden upon a party with a meritorious claim.[10]

While this dictum supports Dick/Cree's position, it does not refer to any other authority and is not precedent. In any event, the result in this case does not conflict with the overall policy goal announced in *Peerless*, "allow[ing] relief to bidders that does not compete with the public interest and is consistent with a mutual public interest in public contracts being performed by the lowest bidder."[11] Post-contract injunctive suits by bidders would compete with the public interest in preventing excessive taxation, and we will therefore not recognize them.

## TAXPAYER STANDING

■ Dick/Cree argues that it adequately pleaded a taxpayer's suit. In order to bring a taxpayer suit, the com-

---

[8]*See Bellingham Am. Publ'g Co. v. Bellingham Publ'g Co.*, 145 Wash. 25, 26-30, 258 P. 836 (1927) (holding that a request to enjoin the award of a contract was moot once a contract was signed); *Times Publ'g Co.*, 9 Wash. at 520-21 (holding that an apparent low bidder had standing to enjoin performance of a wrongfully awarded public contract by virtue of its taxpayer status, but that it had no standing to compel award of the contract to itself by mandamus).

[9]119 Wn.2d 584, 835 P.2d 1012 (1992).

[10]*Peerless*, 119 Wn.2d at 596.

[11]*Peerless*, 119 Wn.2d at 597.

plaint must allege both a taxpayer's cause of action and facts supporting taxpayer status. Among other things, the plaintiff must show that it pays the type of taxes funding the project,[12] and that it asked the Attorney General's office to take action before bringing suit.[13] Dick/Cree neither pleaded nor proved a taxpayer case. The complaint does not allege harm to taxpayers, arguing only that Dick/Cree would "irretrievably lose its rights to contract as the low responsible and responsive bidder on the project." The Regional Justice Center is funded from county property taxes, but neither Dick/Cree nor either of its partners owns property in the county. Finally, Dick/Cree did not show that it requested action by the Attorney General's office. Because Dick/Cree has neither bidder nor taxpayer standing, we affirm the dismissal with prejudice.

In light of our holding, we need not address Dick/Cree's request that we deny any recovery in quantum meruit to the County should the contract be declared illegal, its arguments relating to the court's evidentiary ruling, or the County's motion to supplement the record with documents related to that ruling.

## DENIAL OF TEMPORARY RESTRAINING ORDER

■ Dick/Cree challenges the trial court's refusal to temporarily restrain the County and Hensel Phelps from entering into a contract. Because the only relief requested was to enjoin the *creation* of a contract, and a contract has been formed, there is no longer any remedy that this court can provide to it. When a court can no longer provide effective relief, the controversy is moot.[14] We therefore decline to review the court's ruling.

---

[12]18 EUGENE MCQUILLAN, MUNICIPAL CORPORATIONS § 52.12 (3d ed. rev. vol. 1993). Because neither of the partners in the joint venture owned property taxed for the Justice Center, we need not address Dick/Cree's contention that the taxpayer status of only one partner qualifies the joint venture for standing.

[13]*Tabor v. Moore*, 81 Wn.2d 613, 617, 503 P.2d 736 (1972).

[14]*State v. Gentry*, 125 Wn.2d 570, 616, 888 P.2d 1105, *cert. denied*, 116 S. Ct. 131 (1995).

The Supreme Court addressed nearly the same issue in *Bellingham Am. Publ'g Co. v. Bellingham Publ'g Co.*[15] There, the Bellingham American newspaper brought a taxpayer suit to enjoin the award of a contract to a rival bidder. The trial court granted temporary relief, but denied any further injunction, and a contract was formed. On appeal the Court rejected the newspaper's argument that it had a right to have its case decided "as it stood at the time the action was instituted."[16] Instead, the Court held that the pleadings no longer stated a case for which relief could be granted, rendering the issue moot.[17] We see no distinction between these two cases.

Because our disposition makes it unnecessary to evaluate the merits of the case, we need not decide whether to strike factual allegations in Dick/Cree's brief that may not have support in the record. Neither need we address Dick/Cree's claim to attorney fees under a common benefit/common fund principle.

Affirmed.

GROSSE and AGID, JJ., concur.

---

[15]145 Wash. 25, 258 P. 836 (1927).

[16]*Bellingham Am. Publ'g Co.*, 145 Wash. at 28.

[17]*Bellingham Am. Publ'g Co.*, 145 Wash. at 27-28, 30.