**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| GLOBAL TEL*LINK CORP. d/b/a ViaPath Technologies, | No. 56661-3-II |
| Appellant, | |
| v. | PUBLISHED OPINION |
| WASHINGTON STATE DEPARTMENT OF CORRECTIONS, SECURUS TECHNOLOGIES, INC., | |
| Respondent-Intervenor. | |

MAXA, J. – Global Tel*Link Corporation (GTL) appeals the trial court's grant of Securus Technologies, Inc.'s (Securus) motion to dismiss under CR 12(b)(6) based on waiver and laches. GTL had filed suit to challenge the Department of Corrections' (DOC) incarcerated individual technology services (IITS) procurement process as violating Washington's statutory competitive solicitation requirements.

Since 2006, GTL has provided telephone, internet, and related services to incarcerated individuals in Washington under a contract with DOC. In August 2019, DOC issued a "procurement notice" stating that DOC was seeking a qualified vendor to provide IITS to incarcerated individuals and requesting interested vendors to submit certain materials. GTL submitted a response to the notice and a further response in phase 2 of the process.

In December, DOC notified GTL that it did not select GTL to move on to the next stage of the IITS client services procurement process. In March 2020 and April 2021, GTL sent DOC

No. 56661-3-II

formal complaints stating that the procurement notice and procedures did not comply with Washington's procurement law. In response, DOC explained that it issued the IITS procurement process under the "client services" exception to the requirement of competitive solicitation.

On January 12, 2022, DOC sent an email to GTL stating that DOC had selected Securus as its IITS vendor. On January 14, GTL filed suit against DOC, seeking declaratory and injunctive relief. Securus subsequently intervened as a defendant. GTL sought an injunction to prevent execution of the contract.

Before the scheduled injunction hearing, the trial court granted Securus's motion to dismiss under CR 12(b)(6) based on waiver and laches. GTL appealed, and then filed a motion with this court requesting a stay of the execution of the DOC/Securus contract. A commissioner of this court denied the stay. DOC and Securus executed the IITS contract on April 12.

We hold that under settled Washington law, this appeal became moot once DOC and Securus executed the IITS contract. Accordingly, we dismiss GTL's appeal.[1]

FACTS

*Procurement Process*

At the time the complaint was filed, GTL provided telephone, internet, and related services to individuals in DOC custody in Washington. Since 2006, GTL had provided these services under a contract with DOC.

In July 2019, DOC issued a three-page "procurement notice" for IITS to solicit proposals from interested parties. The notice stated that DOC was "seeking a qualified vendor to provide comprehensive . . . IITS[] to incarcerated individuals and their friends and families." Clerk's

---

[1] Because the appeal is moot, we do not address whether the trial court erred in dismissing GTL's lawsuit based on waiver and laches.

2

No. 56661-3-II

Papers (CP) at 15. The notice stated in detail the services to be provided. However, the notice did not identify the criteria and manner that DOC would use in evaluating vendors or any protest procedures.

In August, GTL submitted a 141-page offer in response to the procurement notice. Three other vendors submitted responses, including Securus. GTL later provided a further response and a demonstration of some of its offered products. In December, DOC sent an email to GTL stating that DOC selected Securus and another vendor to move forward to the next stage of the procurement process.

In March 2020, GTL sent a written complaint to DOC that identified multiple issues with the procurement process and contended that the process violated Washington public contracting law. DOC replied that the IITS procurement procedure was "issued under the client services exception to competitive solicitations" under RCW 39.26.125(6). CP at 23. As a result, client services were not subject to the same requirements as the competitive solicitation procurements.

In April 2021, GTL sent DOC a letter again notifying DOC that its procurement process violated Washington procurement statutes. In response, DOC stated that GTL's bid had not been rejected, although GTL was not the frontrunner in the process.

On January 12, 2022, DOC sent GTL an email stating that DOC had selected Securus as the IITS vendor after more than two years of work.

*Trial Court Proceedings*

On January 14, GTL filed a complaint against DOC. GTL sought a declaration that the IITS procurement procedure violated chapter 39.26 RCW and that any contract issued under the procurement was void, and an order enjoining DOC from proceeding with the IITS contract. Securus later intervened as a defendant.

3

No. 56661-3-II

Four days after filing the complaint, GTL filed a motion for a temporary restraining order to prevent DOC from entering into a contract with Securus. A preliminary injunction hearing was scheduled in March.

However, before the injunction hearing Securus filed a CR 12(b)(6) motion to dismiss based on the doctrines of waiver and laches, which was scheduled before the preliminary injunction hearing. The trial court granted the motion and dismissed GTL's complaint with prejudice.

*Appeal and Execution of Contract*

GTL promptly appealed to this court, and filed a motion for an emergency stay to prevent DOC and Securus from executing their contract while the issue was on appeal. GTL argued that a stay was needed because execution of the contract would moot its appeal. On April 12, the commissioner of this court denied the emergency stay following an analysis under RAP 8.1(b)(3), but did accelerate the appeal.

GTL did not move to modify the commissioner's ruling. That same day, DOC and Securus executed the IITS contract.

During this entire period, GTL continued to provide telephone services under its contract with DOC.

Securus and DOC then filed a motion to dismiss GTL's appeal as moot because DOC and Securus already had executed the IITS contract. The commissioner denied the motion without prejudice to Securus and DOC raising the issue in merits briefing.

GTL appeals the trial court's grant of Securus's CR 12(b)(6) motion to dismiss.

4

No. 56661-3-II

ANALYSIS

GTL argues that it can pursue its appeal even though DOC and Securus now have executed the IITS contract because it has continued standing. Securus and DOC argue that the appeal is moot because DOC has executed its contract with Securus and therefore that GTL no longer has a cause of action. The parties dispute whether Washington law establishes that an unsuccessful public contract bidder's claim is moot once the contract is executed. We agree with Securus and DOC.

A.    LEGAL PRINCIPLES

The general rule is that when a court no longer can provide meaningful relief, the case is moot. *Gonzales v. Inslee*, 21 Wn. App. 2d 110, 124, 504 P.3d 890 (2022).

In *Peerless Food Products, Inc. v. State*, the Supreme Court held that an unsuccessful bidder for a public contract does not have a cause of action for damages against the public agency even if rejection of the bid was wrongful. 119 Wn.2d 584, 590-91, 597, 835 P.2d 1012 (1992). "The policy consideration for the general rule disallowing damages actions for nonaward of public contracts is protection of the public treasury before protection of bidders." *Id.* at 591. This policy prevents the public from paying both for the excessive public contract awarded to another bidder and for the lost profits of the unsuccessful bidder. *Id.*

The court noted that unsuccessful bidders can pursue the remedy of injunctive relief to enjoin the performance of the contract at issue. *Id.* at 596-97. The court stated, "Bidders who are mistakenly or wrongfully denied contracts have every incentive under our current rule to move quickly in seeking an injunction. If a protest is a prerequisite to court action, then bidders may seek temporary restraint on performance of the contract in question." *Id.* at 596.

No. 56661-3-II

In *Dick Enterprises, Inc. v. King County*, Division One of this court addressed whether the public policy stated in *Peerless* also applied to preclude a claim for injunctive relief once the public contract is signed. 83 Wn. App. 566, 568-72, 922 P.2d 184 (1996). The court stated,

> No case has addressed whether the policy of protecting the public treasury permits a bidder to sue to stop performance once a contract is signed. Bidder injunctions against performance of public contracts would adversely affect the public interest by increasing expense to the taxpayers. We therefore hold that the purposes of the competitive bidding laws are best carried out by restricting such suits to plaintiffs with taxpayer standing.

*Id.* at 569-70.

Elaborating on the fact that not recognizing lawsuits by unsuccessful bidders would avoid increased public expense, the court noted that "the costs of rebidding and delay would in many cases far outweigh the financial harm caused by a fraudulent or collusive agreement." *Id.* at 570. The court stated,

> Even where an illegal contract increases expense to the public, bidder injunctions against performance are not the proper way to vindicate public rights. Private suits are motivated by the bidder's desire to rebid and improve its chances to obtain an award. The best way to ensure that lawsuits are brought in the public interest is to restrict standing to those whose rights are at stake – the taxpayers.

*Id.*

The court explained that the public interest must prevail when public and private interests conflict in the context of competitive bidding laws. *Id.* at 571. The court stated, "While *using contract formation as a bright-line cutoff point for bidder standing* necessarily limits the protection of bidder rights, the bidder is not without a remedy: It may seek an injunction before contract formation." *Id.* (emphasis added).

The court acknowledged that the statement in *Peerless* that an unsuccessful bidder could seek to enjoin performance of the contract could support a contrary position. *Id.* at 572. However, the court referred to the statement as "dictum" and emphasized that the statement

6

No. 56661-3-II

"does not refer to any other authority and is not precedent." *Id.* And the court emphasized that precluding an action after the contract has been executed was consistent with the policy goals stated in *Peerless*. *Id.* The court also distinguished an earlier Division One case, *Platt Electric Supply, Inc. v. City of Seattle*, 16 Wn. App. 265, 555 P.2d 421 (1976), which allowed an unsuccessful bidder to sue to enjoin performance after the award of a contract, because the issue of standing "was neither raised nor discussed." *Dick Enters.*, 83 Wn. App. at 571.

The court in *Dick Enterprises* concluded, "Post-contract injunctive suits by bidders would compete with the public interest in preventing excessive taxation, and we will therefore not recognize them." *Id.* at 572.

Division One addressed this issue again in *BBG Group, LLC v. City of Monroe*, 96 Wn. App. 517, 520, 982 P.2d 1176 (1999). The court noted the holding in *Dick Enterprises* that precluded *post-contract* suits for injunctive relief by unsuccessful bidders. *BBG Grp.*, 96 Wn. App. at 520. The court emphasized that an unsuccessful bidder can sue to enjoin the *execution* of a public contract. *Id.* at 521. But once the contract is signed, there is no relief a court can provide to an unsuccessful bidder and therefore any appeal is moot. *Id.* at 521-22.

Subsequent cases from all three divisions have cited to *Dick Enterprises* and/or *BBG Group* in stating the rule that the remedy of unsuccessful bidders on public contracts is limited to suing for injunctive relief before execution of the contract and that bidders do not have standing to enjoin a contract once it has been signed. *Skyline Contractors, Inc. v. Spokane Hous. Auth.*, 172 Wn. App. 193, 205, 289 P.3d 690 (2012); *Quinn Constr. Co. v. King County Fire Prot. Dist. No. 26*, 111 Wn. App. 19, 29, 44 P.3d 865 (2002); *McCandlish Elec., Inc. v. Will Constr. Co.*, 107 Wn. App. 85, 95, 25 P.3d 1057 (2001).

7

No. 56661-3-II

B.      MOOTNESS ANALYSIS

Here, it is undisputed that DOC and Securus have executed the IITS contract.  Therefore, under *Dick Enterprises* and *BBG Group*, GTL cannot obtain injunctive relief to prevent performance of the contract and this appeal is moot with regard to such relief.  *See Dick Enters.*, 83 Wn. App. at 569-70, 572; *BBG Grp.*, 96 Wn. App. at 520-22.

*Dick Enterprises* and *BBG Group* addressed only suits for injunctive relief, not suits for declaratory relief.  But the court in *Dick Enterprises* broadly framed the issue as "whether the policy of protecting the public treasury permits a bidder to sue to stop performance once a contract is signed," and the court answered in the negative.  83 Wn. App. at 569-70.  A declaration that a contract is void – which GTL seeks – also would stop performance even though the contract had been signed.  And the court in *Dick Enterprises* also broadly stated that execution of the contract was a "bright-line cutoff point for bidder standing."  *Id.* at 571.  If an unsuccessful bidder has no standing, the bidder could not pursue either injunctive relief or declaratory relief.  Therefore, we conclude that *Dick Enterprises* and *BBG Group* prohibit an unsuccessful bidder from pursuing declaratory relief as well as injunctive relief to prevent performance of the contract after the contract has been executed.[2]

GTL argues that *Dick Enterprises* and *BBG Group* are distinguishable here because GTL had an existing IITS contract with DOC.  According to GTL, this makes GTL different than the typical unsuccessful bidder that only has an expectancy of possibly getting a public contract.  If DOC proceeds with the contract Securus executed, GTL's contract will come to an end.  But GTL asserts that if the Securus contract is declared void, GTL's contract will continue until a

---

[2] This case does not involve a declaratory action to prevent DOC from engaging in similar competitive bidding violations in the future.  We do not address such an action.

8

No. 56661-3-II

competitive solicitation occurs. Therefore, GTL claims that it has a unique economic interest above that of the general public or a taxpayer in whether DOC's procurement process was unlawful and that interest means that it has continuing standing.

GTL cites to two cases that state that the plaintiffs in those cases had standing because they had a distinct pecuniary interest in the outcome. *Nat'l Elec. Contractors Ass'n, Cascade Chapter v. Riveland*, 138 Wn.2d 9, 25, 978 P.2d 481 (1999) ("NECA/IBEW and its union members have asserted a distinct pecuniary interest over and above the general public or random taxpayer."); *Ronken v. Bd. of County Comm'rs of Snohomish County*, 89 Wn.2d 304, 309, 572 P.2d 1 (1977) ("[A] union local and its individual members and a contractors' association and its individual members have a distinct interest over and above the general public or a random taxpayer.").

However, the policy considerations discussed in *Peerless* and *Dick Enterprises* apply regardless of whether GTL is an incumbent bidder with an ongoing contract or an "outside" bidder. Allowing GTL to prevent performance of the contract would increase the public expense.

GTL relies on a number of other cases, including *Riveland* and *Ronken*, that it claims support the proposition that a party can sue for declaratory and injunctive relief for violating competitive bidding requirements even if the contract at issue has been executed. However, none of these cases addressed the issue here: the standing of an *unsuccessful bidder* to pursue an action to prevent performance of a contract after that contract has been executed.

In *Riveland*, national and local electrical unions challenged DOC's practice of assigning inmate workers to perform electrical work in violation of various statutes. 138 Wn.2d at 13. The Supreme Court discussed standing in relation to the unions' claim that the inmates were

9

No. 56661-3-II

subjected to unsafe working conditions under chapter 49.17 RCW. *Id.* at 25-26. The court

stated,

> NECA/IBEW and its union members have asserted a distinct pecuniary interest
> over and above the general public or random taxpayer. The cost savings related to
> DOC's noncompliance with RCW 49.17 when using inmate labor deprive
> NECA/IBEW and its union members the opportunity to effectively compete for
> employment and contracts. Therefore, NECA/IBEW may challenge the way DOC
> assigns inmate workers to prison jobs, not only as to the electrical licensing and
> public works statutes, but also under RCW 49.17.

*Id.*

*Riveland* is distinguishable from this case because (1) the standing discussion did not

involve competitive bidding; (2) the plaintiff was a union, not an unsuccessful bidder; and (3) the

claim involved the legality of an ongoing policy rather than the award of a particular contract.

In *Ronken*, a union, an association, and its members challenged the Board of County

Commissioners' practice of hiring county employees for public works projects instead of using

competitive bidding procedures to allow the private sector's involvement. 89 Wn.2d at 306. The

court stated,

> Considering the commissioners' first contention regarding respondents' standing,
> we are clear that a union local and its individual members and a contractors'
> association and its individual members have a distinct interest over and above the
> general public or a random taxpayer. They have a direct pecuniary interest in the
> outcome of this case.

*Id.* at 309. The court noted that declaratory and injunctive relief were appropriate because the

plaintiffs were harmed by a continuing policy, not a single decision. *Id.* at 309-10.

*Ronken* is distinguishable from this case because (1) the plaintiffs were not unsuccessful

bidders, and (2) the claim involved the legality of an ongoing policy rather than the award of a

particular contract.

No. 56661-3-II

At oral argument, GTL highlighted *American Traffic Solutions, Inc. v. City of Bellingham*, 163 Wn. App. 427, 260 P.3d 245 (2011). In that case, American Traffic Solutions (ATS) had contracted with the City to install a traffic safety camera system, and filed suit to challenge a ballot initiative that would prohibit the use of such a system. *Id.* at 430. The court held that ATS had standing because the initiative would require cancellation of its contract and cause economic harm. *Id.* at 433.

GTL argues that *American Traffic Solutions* applies because like ATS, it is suing to prevent termination of its existing contract. But this case is distinguishable because it has nothing to do with competitive bidding and involves a completely different factual scenario. Unlike GTL, ATS was not an unsuccessful bidder and was not attempting to prevent performance of a contract after that contract had been executed.

In *Associated General Contractors of Washington v. King County*, a contractor organization argued that a King County ordinance permitting the county to use county employees instead of independent contractors to perform certain public works projects violated the King County charter and state statutes. 124 Wn.2d 855, 857, 881 P.2d 996 (1994). The Supreme Court addressed the merits of the claim but did not discuss standing or mootness. *Id.* at 858-65.

*Associated General Contractors* is distinguishable from this case because (1) the plaintiff was a trade association, not an unsuccessful bidder; and (2) the claim involved the legality of an ongoing policy rather than the award of a particular contract. And apparently King County did not challenge the organization's standing or make a mootness argument.

In *Painting & Decorating Contractors of America, Inc. v. Ellensburg School District* (*PDCA*), a contractor association brought suit against the school district for awarding a contract

11

No. 56661-3-II

without submitting it for competitive bidding in violation of the competitive bidding statute. 96 Wn.2d 806, 807-09, 638 P.2d 1220 (1982). The contract was completed, apparently even before suit was filed. *Id.* at 808-09. The Supreme Court addressed the merits of the claim, holding that the school district was subject to the statutory competitive bidding requirements. *Id.* at 811-12. The court did address mootness. *Id.* at 813-14. But the question was whether a statutory amendment rendered the case moot, not whether execution of the contract rendered the case moot. *Id.* The court did not address the issue presented in this case.

*PDCA* is distinguishable from this case because the plaintiff was a trade organization, not an unsuccessful bidder. And apparently the school district did not challenge the organization's standing or make a mootness argument based on the execution of the contract.

In *Platt*, an unsuccessful bidder brought suit against the City of Seattle to enjoin the city from proceeding with the contract that it had awarded to a competitor. 16 Wn. App at 266-68. This court held that the contract was illegal and void, and remanded for the trial court to enjoin the city from proceeding under the contract. *Id.* at 279. The court did not address standing or mootness.

As discussed above, *Platt* could support a disappointed bidder's standing to enjoin performance after the contract has been signed. But the court in *Dick Enterprises* noted that although addressing the merits implied that standing was present, the issue of standing was "neither raised nor discussed." 83 Wn. App. at 571. We agree that *Platt* is distinguishable on that basis. In addition, the opinion does not expressly state whether or not the contract awarded to the plaintiff's competitor actually was executed at the time of the appeal.[3]

---

[3] GTL also cites to other cases, but those cases have nothing to do with competitive bidding on public contracts. *See State ex rel. Peninsula Neighborhood Ass'n v. Dep't of Transp.*, 142 Wn.2d 328, 12 P.3d 134 (2000) (challenging the legality of a contract under state law); *Yakima*

No. 56661-3-II

GTL also relies on *Peerless*. In that case, a disappointed bidder sought monetary damages from the State, alleging that the State wrongfully awarded a dairy supply contract to another bidder. 119 Wn.2d at 585. As noted above, the court held that an unsuccessful bidder did not have a cause of action for damages against a public agency. *Id.* at 590-91. GTL focuses on the court's statements that "bidders may seek temporary restraint on *performance of the contract*" and "[b]ond requirements upon bidders seeking to enjoin *performance of a contract* by a third party are not an unfair burden upon a party with a meritorious claim." *Id.* at 596 (emphasis added).

As discussed above, the court in *Dick Enterprises* acknowledged that these statements could support the position that an unsuccessful bidder could maintain an action even after the contract at issue was executed. 83 Wn. App. at 572. However, the court disregarded these statements because they were dictum, were not supported with citation to any authority, and precluding an action after the contract has been executed was consistent with the policy goals stated in *Peerless*. *Id.* We agree with this analysis. In addition, the court in *Peerless* did not directly address the issue of whether an unsuccessful bidder could pursue a lawsuit after the contract has been executed.

Significantly, all of the cases on which GTL relies except *Riveland* were decided before *Dick Enterprises* and *BBG Group*. And *Riveland* addressed standing in the context of inmate safety, not procurement of public contracts. No case has questioned those decisions, and as noted, several cases have followed *Dick Enterprises* and *BBG Group* as settled law. In fact, as

---

*County (West Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 858 P.2d 245 (1993) (challenging the validity of sewer service agreements).

No. 56661-3-II

noted above, GTL itself argued to the commissioner of this court that its appeal would be moot

once the contract was executed.

We follow *Dick Enterprises* and *BBG Group* and hold that because DOC and Securus

have executed the IITS contract, GTL is precluded from pursuing a suit to prevent the

performance of the contract.  Therefore, we conclude that this appeal is moot.

CONCLUSION

We dismiss GTL's appeal as moot.

MAXA, J.

We concur:

LEE, J.

GLASGOW, C.J.