FILED
COURT OF APPEALS
DIVISION II

2013 OCT -1 AM 9: 11

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ADVOCATES FOR RESPONSIBLE GOVERNMENT, a Washington nonprofit corporation, | No. 44139-0-II |
| Respondent, | |
| v. | |
| MASON COUNTY, a Washington municipal corporation and MASON COUNTY BOARD OF COMMISSIONERS, the legislative body of Mason County; REGIONAL DISPOSAL COMPANY, | UNPUBLISHED OPINION |
| Appellants. | |

WORSWICK, C.J. — On June 5, 2012, the Mason County Board of Commissioners (the Board) voted at a regularly scheduled public meeting to extend a solid waste transportation contract with Regional Disposal Company (RDC) set to expire on August 26, 2013. Afterward, a nonprofit corporation, Advocates for Responsible Government (Advocates), sought a writ of mandamus compelling the Board to comply with a request-for-proposal process in awarding the waste transport contract and nullification of the approved contract extension. After hearing argument on the matter at a show cause hearing, Grays Harbor Superior Court granted both

requests, ruling that the Board had violated bidding and request-for-proposal statutes[1] and further ruling sua sponte that the Board had violated the Open Public Meetings Act of 1971 (OPMA).[2]

Mason County (the County) and RDC appeal the judgment and order granting writ of mandamus and declaratory relief, arguing that (1) the trial court erred in ruling that the Board violated OPMA, (2) Advocates and its members lacked standing to seek the writs and declaratory relief in question, and (3) the trial court erred in nullifying the contract extension and issuing a writ of mandamus requiring the County to comply with the competitive bidding process of RCW 36.32.250 or the request-for-proposal process under RCW 36.58.090.[3]

At oral argument before this court, Advocates conceded that the trial court erred in finding an OPMA violation. Wash. Court of Appeals oral argument, *Advocates for Resp. Gov. v. Mason Co.*, No. 44139-0-II (Sept. 4, 2013), at 13 min., 02 sec. (on file with court). We accept that concession because uncontroverted evidence in the record establishes that no OPMA violation occurred. In addition, we hold that the trial court erred in concluding that Advocates and its members had standing to seek the writs and declaratory relief in question. Because standing is a threshold issue and lack of standing is dispositive in this case, we do not address the merits of the parties' remaining contentions. *See Ullery v. Fulleton*, 162 Wn. App. 596, 604, 256

---

[1] RCW 36.32.250 and RCW 36.58.090.

[2] Ch. 42.30 RCW.

[3] RCW 36.58.090 authorizes a county's legislative authority to contract with vendors for "the design, construction, or operation of, or other service related to . . . solid waste handling systems, plants, sites, or other facilities." The statute is most readily characterized as a "request-for-proposals" statute and is permissive in dictating how a county selects solid waste contractors for certain purposes. In contrast, RCW 36.32.250, the statute governing competitive bidding for most county "public works" contracts, is strict in its requirements and requires contracts to be awarded "to the lowest responsible bidder" that has not been rejected for good cause.

P.3d 406 ("[W]hile not a matter of subject matter jurisdiction, the claims of a plaintiff determined to lack standing are not his or hers to assert and cannot be resolved in whole or in part on the merits."), *review denied*, 173 Wn.2d 1003 (2011). Accordingly, we vacate the trial court's judgment and order granting writ of mandamus and declaratory relief, and remand for dismissal of Advocates' suit without prejudice.

## FACTS

In 1992, Lewis County and Grays Harbor County jointly undertook a public bidding process to procure solid waste transport services, eventually awarding the contract to RDC. Although the County did not participate in the bidding process, it entered into a 1993 interlocal agreement with Lewis and Grays Harbor Counties to reimburse them for "its share of the costs incurred by the Counties in the Public Bid Process." Clerk's Papers (CP) at 352. This interlocal agreement allowed the County to contract with RDC "pursuant to the terms of the bid [RDC] submitted in the Public Bid Process." CP at 351-52.

The 1993 contract between RDC and the County requires RDC to accept delivery of solid waste at a transfer facility owned and operated by the County. After the County loads its solid waste into RDC-owned containers, RDC and its subcontractors transport the containers to a landfill in Klickitat County. The County pays RDC a fee for this service on a per-ton basis. No taxes are used to pay fees to RDC; instead, the County generates revenue through tipping fees and other nontax sources and pays RDC with those funds. The County and RDC have amended the contract multiple times since 1993: in 1994, the County agreed to facilitate RDC's use of rail lines to transport waste and RDC agreed to a reduction of its fees; in 1997, the parties agreed to

3

extend the term of the contract to August 26, 2013, and RDC further reduced its fees[4]; and in 1998, RDC again reduced its fees.

At a regularly scheduled open public meeting in January 2012, Mason County Public Works Department Deputy Director Tom Moore briefed the Board on the need to extend the RDC contract. Moore briefed the Board again on this issue in May 2012 at a regularly scheduled public meeting. At another regularly scheduled public meeting on June 5, extensive discussion occurred concerning a proposal to extend the RDC contract by seven years. After this discussion, the Board approved the seven-year contract extension. As part of the agreement, RDC committed to contributing $150,000 toward the County's installation of new scales at the transfer facility and agreed to further reduce its fees.

On June 25, 2012, Advocates, a nonprofit corporation, petitioned Grays Harbor County Superior Court for a "writ of mandamus, writ of prohibition, declaratory relief and injunctive relief." CP at 1 (capitalization omitted). Advocates argued that the Board failed to comply with RCW 36.58.090 in extending the RDC contract, acted in an arbitrary and capricious manner in making its decision, and potentially violated OPMA by discussing the contract extension at an April 30 executive meeting. Advocates did not argue that the Board failed to comply with RCW 36.32.250. Advocates asked the court to issue a writ of mandamus "ordering the Board of Mason County Commissioners to comply with RCW 36.58.090 in awarding the Contract for Solid Waste Export Services." CP at 9. It also asked for a writ of prohibition terminating the RDC contract or an injunction prohibiting creation of a new RDC contract.

---

[4] The original contract provided for a five-year term with the option for three five-year renewals. The 1997 amendment essentially exercised all three five-year renewal options.

4

No. 44139-0-II

That same day, the trial court ordered the County and the Board to appear and "show cause why they should not be ordered to comply with RCW 36.58.090 in awarding the contract for solid waste export services." CP at 137-38. The show cause order did not ask the County or the Board to address whether the Board violated OPMA or failed to comply with RCW 36.32.250. Shortly thereafter, the County, the Board, and Advocates stipulated to allowing RDC to intervene as a party in the action.

The County and RDC argued, inter alia, that Advocates lacked standing to bring the present action and that RCW 36.58.090 does not apply to contracts for *transport* of solid waste. The County and RDC also argued that even if RCW 36.58.090 governed creation of solid waste transportation contracts, the statute's bidding procedure is permissive rather than mandatory and, in result, the County had no obligation to follow the statute's request-for-proposal requirements.

At the show cause hearing on July 16, 2012, the trial court allowed the parties to argue their respective sides but decided to do more research on standing and the original 1993 contract before coming to a decision. Neither OPMA nor RCW 36.32.250 were mentioned during this hearing. The parties again appeared before the trial court on August 10. Advocates argued that if the organization lacked standing to request the mandamus petition or declaratory relief, the court should allow it to amend its plea to include the organization's individual member taxpayers. RDC argued that even if the court allowed Advocates to amend its plea, the individual members of the group would lack taxpayer standing because (1) none of the members could show that he or she paid a tax related to the solid waste transport contract, and (2) none of the members asked the Attorney General's office to take action before bringing the suit. Both parties also repeated their arguments about the correct interpretation of RCW 36.58.090. Again, neither party mentioned OPMA or RCW 36.32.250.

5

No. 44139-0-II

After hearing from both parties, the trial court delivered its decision:

Let's get pragmatic here. I like to see things taken care of in a more intellectual approach to common steps.

Number one. There's no question in my mind that [RCW] 36.58.090 applies to this type of contract. No question about that in my mind.

Number two. Was there compliance with the open public meeting act? No.

Number three. I believe that there is standing, however, I will also allow the amendment to include the individuals. Basically I believe what took place here [is] a matter of rational common sense.

Number one, the county commissioners are not required under the statute to comply with – with lowest competitive bidding. They can do whatever they wish making an intelligent decision. In our day and age there is no question that open government is totally to be observed at all times. And I think it's going to continue and it's going to continue. And fortunately or unfortunately, it turns into a litigious situation. However, I believe, as I've indicated, one, they did not comply with open public meetings; two, this statute which is a – does not require them to take the lowest competitive bid is appropriate; number three, I believe that the citizens or the plaintiffs have a right to bring this petition. Because the main question, was this is [sic] a type of matter that should have been discussed in an open public meeting.

End of my discussion. So therefore you are entitled to relief? Yes. Remedy? I'm going to invent the remedy. The remedy is that the contract is basically void and they're relieved, but there is a six month time frame. And the purpose is very simple in my opinion. A mistake has been made. The mistake needs to be given the opportunity to be clear itself. The county should be given the opportunity to conduct an open public meeting. They should then, if anyone wants to give them further information after public discussion, they can exercise [RCW] 36.58.090 and award the contract according to the power that they have.

Bottom line, maybe they'll change their mind. The other side of the coin, maybe this is just simply an exercise in futility and the public will have a right to their own public meeting and the commissioners will have a right to make a decision according to that statute to what they feel is appropriate under the contract. I'm giving a six month period of time to enable that to take place and the order shall read that none of this decision of this Court shall interfere with the county commissioners [sic] right to proceed and conduct an open public meeting pursuant to [RCW] 36.58.090 and entertain appropriate bids and/or. It's up to them.

Now, if you people don't like it it's tough break. As far as I'm concerned, I have given you a pragmatic response. The public is going to get their alternative and the commissioners are going to be able to exercise their power.

And I'm done, have a nice day.

Report of Proceedings (RP) (Aug. 10, 2012) at 46-49.

6

Following this, Advocates moved for entry of their preferred form of an order and judgment. This proposed order stated in its factual findings that the 2012 contract extension was, in fact, a new contract between the County and RDC, that the County did not comply with the public works competitive bidding process from RCW 36.32.250 or the vendor selection process from RCW 36.58.090, and that the Board did not discuss the contract in any open public meetings prior to the June 5, 2012 meeting when the contract was approved.[5] The proposed order decreed that the 2012 contract would be nullified because the Board violated OPMA, and a writ of mandamus would issue requiring the Board to comply with RCW 36.32.250 or RCW 36.58.090 in awarding the solid waste transportation contract.

The County and RDC opposed entry of Advocates' preferred order, pointing out that the trial court's show cause order did not require them "to show cause with respect to compliance with [OPMA]" and, if it had, they would have presented evidence that a contract extension was discussed at least three times at open public meetings prior to the June 5 final decision. CP at 413.

The parties appeared before the trial court on October 15 to discuss entry of the proposed order. After hearing the County's and RDC's arguments on why it would be improper to enter a finding on OPMA when the issue was not mentioned in the show cause order, the trial court signed Advocates' proposed order. The trial court explained,

> Gosh, I hate to do something stupid, like solve a problem with common sense.
> You know, realistically, when you look at the statutes, they don't have to go through the competitive bids process, we already had that matter, they can go

---

[5] It is unclear why Advocates included the provision related to RCW 36.32.250 in this proposed order as Advocates own pleadings to the trial court state that they "have never asserted that the Commissioners must comply with the stricter competitive bidding requirements of RCW 36.32.250." CP at 328.

and pick whoever they want. They just didn't hold a public meeting so they can have the discussion so everybody could put their two bits in. So, they could do it appropriately. And then if I give you people a lot of time, and hey, they will solve a problem. But it's kind of like a guy saying, hey, I screwed up. I think I will go correct what I screwed up, and, we even were given time to go fix it. But instead, we are going to sit here and play this game.

So, the order that is submitted by the Advocates will be signed. . . .

And you people can go appeal and waste more public money instead of doing what's common sense. I would appreciate it, when you get up to the Court of Appeals, that, maybe the Court of Appeals would do something like, say, it's too bad that you had a judge that used common sense, I would like that kind of a decision, it would make me feel better. So, in the mean time, have at it. Goodbye.

RP (Oct. 15, 2012) at 4-5.

The County and RDC timely appeal the judgment and order granting writ of mandamus and declaratory relief.

## ANALYSIS

### I. OPEN PUBLIC MEETINGS ACT

The County and RDC assert that the trial court's finding that the Board violated OPMA is factually incorrect as "uncontroverted evidence in the record shows that the contract extension that is at issue in the instant case was discussed in at least two open public meetings before the contract extension was approved in an open public meeting on June 5, 2012." Br. of Appellant (Mason County) at 29. The County and RDC also argue that the trial court erred, as a matter of law, in concluding that the Board violated OPMA when it failed to have a "pre-meeting prior to the [open public] meeting where action was taken." Br. of Appellant (Mason County) at 31. Because Advocates properly conceded at oral argument that the trial court erred in finding a violation of OPMA, we agree.

This court reviews "findings of fact under a 'substantial evidence standard, defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true.'"

*Korst v. McMahon*, 136 Wn. App. 202, 206, 148 P.3d 1081 (2006) (quoting *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)). We review conclusions of law de novo and the interpretation and construction of OPMA is a question of law subject to de novo review. *Campbell v. Dep't of Emp't Sec.*, 174 Wn. App. 210, 216, 297 P.3d 757 (2013); *Wood v. Battle Ground Sch. Dist.*, 107 Wn. App. 550, 558, 27 P.3d 1208 (2001).

Here, the trial court's fourth finding of fact in the judgment and order granting writ of mandamus and declaratory relief states that "[t]he Board of Mason County Commissioners did not discuss the contract for solid waste export and disposal in an open public meeting at any time in 2012 prior to the June 5, 2012 meeting at which the 2012 contract was approved." CP at 417. The County and RDC, however, presented *uncontroverted* evidence prior to entry of the order that Mason County Public Works Department Deputy Director Moore briefed the Board on the need for extending the contract at two regularly scheduled public meetings prior to the June 5 meeting at which the decision was made to extend the contract. Accordingly, substantial evidence does not support the trial court's fourth factual finding.[6]

In addition, the sixth legal conclusion in the judgment and order states that "[t]he Board of Mason County Commissioners violated [OPMA] by failing to transact the official business of Mason County in open and public meetings." CP at 418. This conclusion is factually and legally incorrect.

---

[6] The County and RDC understandably did not present this evidence prior to the original show cause hearing because the trial court's show cause order did not ask the parties to address OPMA and, at the show cause hearing, neither party nor the trial court raised OPMA as an issue. When this evidence was finally presented prior to entry of Advocates' preferred order, the trial court appears to have ignored it entirely.

It is undisputed that the Board took "final action"[7] on June 5 when it awarded the RDC contract extension and that this decision occurred at a regularly scheduled public meeting; Advocates has never argued that this meeting violated OPMA.[8] The trial court appears to have concluded that an OPMA violation occurred because no preliminary discussion of the vote occurred at meetings prior to June 5. First, as discussed above, this is factually incorrect. The County and RDC presented uncontroverted evidence that a contract extension was discussed in public meetings twice prior to the June 5 final action. Second, while OPMA dictates that "[a]ll meetings of the governing body of a public agency shall be open and public and all persons shall be permitted to attend any meeting of the governing body of a public agency," RCW 42.30.030, and that "[n]o governing body of a public agency shall adopt any ordinance, resolution, rule, regulation, order, or directive, except in a meeting open to the public and then only at a meeting, the date of which is fixed by law or rule," RCW 42.30.060(1), nothing in OPMA requires a public agency to hold *multiple* public meetings on a given resolution prior to voting on it publicly. Accordingly, the trial court erred, as a matter of law, in ruling that the Board violated OPMA and we accept Advocates' concession of this issue.

---

[7] As defined by RCW 42.30.020(3), a "[f]inal action" is "a collective positive or negative decision, or an actual vote by a majority of the members of a governing body when sitting as a body or entity."

[8] In its petition for writ of mandamus, Advocates did argue that the Board met in a private executive session on April 30, 2012, and "a reasonable inference can be drawn that the purpose of this meeting was to deliberate, discuss, consider, review, and evaluate the new contract" with RDC. CP at 8. But Advocates recognized at oral argument that in *Organization to Preserve Agricultural Lands v. Adams County*, 128 Wn.2d 869, 883, 913 P.2d 793 (1996), the Washington Supreme Court concluded that even if a Board discusses future plans in a manner that violates OPMA, "the statute does not . . . require that subsequent actions taken in compliance with the Act are also invalidated." Wash. Court of Appeals oral argument, *supra*, at 13 min., 02 sec. (on file with court).

## II. STANDING

The County and RDC argue that Advocates and its individual members lack standing to bring this action because they fail to meet their burden of establishing organizational standing or taxpayer standing. More specifically, they argue that Advocates "did not meet its burden of establishing that the members of its organization would have standing to sue in their own right" because Advocates' individual members "must show that they pay the kind of tax that funds the contract they are seeking to invalidate, and they must show that, prior to bringing the suit, they have asked the Attorney General to take action against the contract." Br. of Appellant (Mason County) at 26-27. We agree.

A. *Standard of Review*

Standing is a party's right to make a legal claim or seek judicial enforcement of a duty or right. *State v. Link*, 136 Wn. App. 685, 692, 150 P.3d 610, *review denied*, 160 Wn.2d 1025 (2007). The doctrine of standing prohibits a party from asserting another's legal right. *West v. Thurston County*, 144 Wn. App. 573, 578, 183 P.3d 346 (2008). The rule ensures that courts render a final judgment on an actual dispute between opposing parties that have a genuine stake in resolving the dispute. *Lakewood Racquet Club, Inc. v. Jensen*, 156 Wn. App. 215, 223, 232 P.3d 1147 (2010). Standing is a threshold issue which we review de novo. *In re Estate of Becker*, 177 Wn.2d 242, 246, 298 P.3d 720 (2013).

B. *Taxpayer Standing*

To allege taxpayer standing, a plaintiff's complaint must allege (1) a taxpayer's cause of action and facts supporting the plaintiff's taxpayer status; (2) that the plaintiff pays the type of taxes funding the project in question; and (3) the plaintiff asked the Attorney General's office to take the action *before* bringing suit. *Dick Enters., Inc. v. King County*, 83 Wn. App. 566, 572-73, 922 P.2d 184 (1996). Taxpayers need not allege a direct, special, or pecuniary interest in the outcome of the lawsuit, but they must demonstrate that their demand to the Attorney General's office to initiate the action was refused, unless such a request would have been futile. *Robinson v. City of Seattle*, 102 Wn. App. 795, 805, 10 P.3d 452 (2000) (citing *City of Tacoma v. O'Brien*, 85 Wn.2d 266, 269, 534 P.2d 114 (1975)).

Here, while Advocates' individual members have submitted affidavits declaring that they are taxpayers in the County, none of them have alleged that they pay taxes related to the RDC contract in question. In fact, as Mason County Acting Solid Waste Program Manager John Cunningham's declaration establishes, none of them *could* allege this as no tax monies are used to pay for the RDC contract. The contract is funded entirely through user fees and none of the affidavits submitted by Advocates' individual members alleges that any member has paid such fees. Additionally, while Advocates member Jack Johnson did submit a written request to the Attorney General to take action in this matter, that request was submitted *after* Advocates had commenced the present action. But the Washington Supreme Court has declared that this requirement is a "condition *precedent* to the maintenance of a taxpayer's action challenging the

12

validity and legality of what public officers are intending to do or have done." *Reiter v. Wallgren*, 28 Wn.2d 872, 877, 184 P.2d 571 (1947) (emphasis added).

Accordingly, we hold that Advocates and its members lack standing[9] to bring this action and vacate the trial court's judgment and order granting the writ of mandamus and declaratory relief.[10] And because lack of standing is dispositive, we do not address the rest of the parties'

---

[9] Advocates also claims that it has standing to sue in its representational capacity. An organization "'has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Am. Legion Post #149 v. Dep't of Health*, 164 Wn.2d 570, 595, 192 P.3d 306 (2008) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)). Here, because Advocates fails to meet its burden of establishing that its members would have standing to sue in their own right, as explained above, this claim necessarily fails.

[10] Advocates argues that, as in *Farris v. Munro*, 99 Wn.2d 326, 662 P.2d 821 (1983), if it is questionable whether a taxpayer has standing to bring a suit, courts can reach the merits of substantive claims if the matter is sufficiently important. In *Farris*, the petitioner opposed the "State Lottery Act," ch. 67.70 RCW, and brought suit as a taxpayer. 99 Wn.2d at 329. The petitioner did not, however, first request action by the Attorney General. *Farris*, 99 Wn.2d at 329. Despite this, our Supreme Court held that because the issue was "vital to the state revenue process" and could impact an upcoming ballot measure, the case involved a public interest significant enough to warrant reaching the merits despite the plaintiff's lack of standing. *Farris*, 99 Wn.2d at 330. Similarly, in *Washington Natural Gas Co. v. Public Utilities District No. 1 of Snohomish County*, 77 Wn.2d 94, 96, 459 P.2d 633 (1969), our Supreme Court addressed the merits in a case "of statewide importance" that impacted the "generation, sale and distribution of electrical energy within the state" despite the plaintiff's lack of standing. Here, though, it is difficult to analogize Mason County's extension of a contract for solid waste disposal that does not increase any citizen's tax burden to an issue "of serious public importance [that] immediately affects substantial segments of the population" and "will have a direct bearing on the commerce, finance, labor, industry or agriculture" of the state. *Vovos v. Grant*, 87 Wn.2d 697, 701, 555 P.2d 1343 (1976).

13

No. 44139-0-II

arguments despite recognizing that a result on the merits would have been more satisfactory to all the parties.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
WORSWICK, C.J.

We concur:

_____
HUNT, J.

_____
PENOYAR, J.

14