THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| AIDS HEALTHCARE FOUNDATION, a California non-profit corporation,<br><br>Appellant,<br><br>v.<br><br>DEPARTMENT OF PUBLIC HEALTH, d/b/a PUBLIC HEALTH—SEATTLE & KING COUNTY, a division of King County, a political subdivision of the State of Washington,<br><br>Respondent. | No. 80532-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

ANDRUS, A.C.J. — AIDS Healthcare Foundation (AHF) appeals the dismissal of its lawsuit against King County's Department of Public Health. AHF sought to enjoin the Department from awarding federal funds for AIDS/HIV-related services to other service providers and to reallocate funding to AHF. We affirm.

FACTUAL BACKGROUND

The Ryan White Comprehensive AIDS Resources Emergency (CARE) Act and the subsequent Ryan White HIV/AIDS Treatment Extension Act of 2009,[1]

---

[1] 42 U.S.C. §§ 300ff et seq. The purpose of the legislation is to provide emergency assistance to localities disproportionately affected by the HIV (human immunodeficiency virus) epidemic and to make financial assistance available to develop, organize, coordinate, and operate a more effective

Citations and pin cites are based on the Westlaw online version of the cited material.

allocate federal funds to state and local governments to provide services and treatment to those suffering from or affected by HIV/AIDS. 42 U.S.C. § 300ff. King County, through the Department of Public Heath—Seattle & King County (Department), is eligible to receive this funding, called Ryan White Part A funding, and distributes the money to private organizations through a competitive application process.

On September 13, 2018, the Department advertised a Request for Applications (RFA) and invited service providers to apply for funding in six different service categories for the 2019 fiscal year of March 1, 2019 to February 29, 2020. It had approximately $6,087,110 available for a 12-month award. Of this sum, approximately $186,653 was allocated for a "Minority AIDS Initiative" in the area of "Early Intervention Services" (EIS), described as outreach and health education/risk reduction, HIV testing, referrals, and linkage to HIV care for members of a racial or ethnic community disproportionately affected by HIV.

AHF, a California nonprofit that has provided HIV/AIDS services in King County since 2015 applied for EIS funding. Two other organizations applied for the same EIS funding, the Center for Multicultural Health (CMCH) and People of Color Against AIDS Network (POCAAN).

The organizations' applications were reviewed by the "Objective Review Committee" (ORC), a team of five people appointed by King County to evaluate and score the applications and make funding recommendations to the Department. Each applicant was scored based on their program design, capacity and

---

and cost efficient system for the delivery of essential services to individuals and families with HIV. 42 U.S.C. § 300ff.

experience, plans for collaborating with other agencies and providers, cultural competency, quality management, and budget.

The ORC scored AHF lower than POCAAN and CMCH. It concluded that AHF's application lacked sufficient information to determine whether it could meet program needs. It noted that AHF sought a 256 percent increase in cost per client from the amount it received in Ryan White funds in 2018 without concern that AHF's quarterly reports submitted with its application showed it served no clients and conducted no testing events during the first half of 2018. And ORC reviewers were concerned that AHF did not provide specifics about how it was connected to the target population or how it would adapt to changes in community needs. Because requests for EIS funding exceeded the money available, ORC opted to recommend that the Department provide funding to CMCH and POCAAN, instead of AHF.

In late December 2018, the Department awarded $118,827 in EIS funding to CMCH and the remaining $67,826 in EIS funding to POCAAN. It notified AHF that it would not receive any funding.

On January 9, 2019, AHF filed an administrative appeal of the Department's award decision, arguing the ORC's technical review document contained inaccurate statements about AHF's services and the ORC failed to apply its standards consistently across the three applications. The Department denied the appeal on March 18, 2019.

AHF then brought this action for injunctive relief and sought a temporary restraining order (TRO) to enjoin the County from executing contracts with the

successful applicants. AHF named the Department as the sole defendant and did not serve a complaint or summons on defense counsel or the Department within ninety days of commencing the action.

A superior court commissioner denied the motion for a TRO, finding that AHF failed to demonstrate it was denied funding for any reason other than the quality of its application. AHF did not move to revise the commissioner's ruling.[2] AHF thereafter filed an amended complaint seeking to compel the Department to enter into a contract with AHF and to prohibit the Department from distributing funds to the successful applicants. AHF did not, however, move for a preliminary injunction or seek any type of a stay from this court. The Department thus moved ahead and executed contracts with CMCH and POCAAN, awarding all of the available EIS funding to these two organizations. By mid-July 2019, the Department had awarded all available grant funds through the RFA process.

After executing these agreements, the Department moved to dismiss AHF's complaint under CR 12(b)(6) and CR 56, arguing that AHF had named the wrong defendant, that it had not served process on the Department or the County, and that AHF's claim for injunctive relief was moot because the Department had awarded all available grant funds to other organizations. AHF served process on the Department after receiving this dispositive motion and it moved to substitute King County as the properly named defendant. It also opposed the dismissal of

---

[2] In King County Superior Court, motions for temporary restraining orders are handled by ex parte department commissioners. KING COUNTY SUPER. CT. LOCAL CIV. R. (KCLR) 40.1(b)(2)(F). RCW 2.24.050 requires that any order of a court commissioner is subject to revision by superior court. Motions to revise a commissioner's ruling must be filed within 10 days of the entry of the order. KCLR 7(b)(8).

its complaint, arguing that there could be funds that the Department chose to reallocate during the relevant funding period and the trial court had the equitable authority to order it to award any such funds to AHF, if or when they became available.

The trial court dismissed AHF's complaint under CR 56, concluding that AHF had failed to name King County, the proper defendant here; failed to effectuate proper service of process; and failed to state a claim for which it could grant relief. The trial court denied AHF's motion to amend the complaint to name King County as the defendant, concluding the amendment would be futile. The court recognized that a dismissal for failure to name the County as the proper defendant and for lack of service of process was without prejudice but it concluded that dismissal with prejudice was appropriate on the alternative basis that AHF had not filed and served its injunction action before the County signed contracts with the competing service providers.

AHF moved for reconsideration but then filed a notice of appeal with this court before the trial court ruled on its pending motion. The trial court concluded that it lacked the authority to rule on the motion without permission from this court under RAP 7.2(a). AHF did not seek permission from this court to allow the trial court to consider its motion for reconsideration.

On appeal, AHF assigns error to the order dismissing its complaint with prejudice and the order denying its motion for reconsideration.[3]

---

[3] AHF does not challenge the trial court's dismissal without prejudice or the denial of its motion to amend the complaint. We therefore do not address whether AHF named the proper party as defendant or failed to effectuate service of process.

ANALYSIS

A.  Standard of Review

Although the Department moved to dismiss AHF's complaint under both CR 12(b)(6) and CR 56, the trial court treated the motion as one for summary judgment because both parties submitted declarations and documentary evidence to support their respective positions.  The order reflected this conclusion, clearly indicating the trial court had applied the summary judgment standard under CR 56.

We review the trial court's summary judgment ruling de novo.  Borton & Sons, Inc. v. Burbank Properties, LLC, 196 Wn.2d 199, 205, 471 P.3d 871 (2020).  A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  CR 56(c).[4]

B.  Mootness

The trial court dismissed AHF's complaint because it concluded there was no relief it could grant to AHF under this Court's decision in Dick Enterprises, Inc. v. Metro. King County, 83 Wn. App. 566, 922 P.2d 184 (1996).  AHF contends the trial court erred in applying Dick Enterprises to this case.  We reject AHF's narrow reading of Dick Enterprises and conclude, as did the trial court, that AHF's failure to seek and obtain injunctive relief before King County executed contracts with CMCH and POCAAN renders its lawsuit for injunctive relief moot.

---

[4] AHF's argument that we should apply the standard applicable to CR 12(b)(6) motions is not persuasive in light of the trial court's clear ruling under CR 56 and its reliance on factual evidence not incorporated by reference in the complaint.

A case is moot when a court can no longer provide an effective remedy. Hart v. Dep't of Soc. & Health Servs., 111 Wn.2d 445, 447, 759 P.2d 1206 (1988). Under Dick Enterprises, a disappointed bidder for a public contract may seek to enjoin an agency from executing a contract with a successful bidder, but once the agency has executed the contract, public policy precludes a suit to enjoin performance of that contract. 83 Wn. App. at 571.

In AHF's amended complaint, it sought only injunctive relief. It asked the court to enjoin the Department from distributing payments of the Ryan White funds for EIS to the successful applicants, to require the Department to rescind all contracts for EIS, and to require the Department to issue a revised RFA to rebid all undistributed Ryan White funds in the EIS category.

AHF was unsuccessful in obtaining a TRO, did not file a motion to revise the commissioner's decision, and did not seek any relief from this court before the County entered into contracts with CMCH and POCAAN, committing all of the available EIS funds. By the time the Department moved to dismiss AHF's complaint, there were no Ryan White funds available for the trial court to order the Department to allocate or reallocate to AHF. Under Dick Enterprises, it would have violated public policy to order the Department to rescind validly executed public contracts and to order the agency to enter into a contract with AHF instead.

AHF argues Dick Enterprises should not be extended to applications for Ryan White funding and should be limited to "contracts awarded for a defined scope of work (e.g. construction projects) pursuant to a competitive bidding statute such as RCW 39.04.010(1)." It contends that the public's interest in competitive

bidding on public procurement contracts differs from the public's interest in awarding Ryan White funds to HIV/AIDs service providers. We disagree.

First, nothing in <u>Dick Enterprises</u> limits its holding to publicly bid construction or public works projects. Second, the competition for Ryan White funds is analogous to a competitive bidding process for any public works contract. The Department's RFA process was subject to King County's competitive bidding regulations. KING COUNTY CODE 2.93.190. Finally, the same public policy considerations supporting the holding in <u>Dick Enterprises</u> are also involved here. It would undermine, not advance, the public interest to force King County to incur the cost of rescinding executed contracts and restarting the rebidding process whenever a disappointed service provider contends its application was unfairly evaluated.

At oral argument, AHF stated it no longer seeks the rescission of existing contracts, but merely wants to compete for funds that may have become available for reallocation during a grant year. AHF argues the Ryan White Act permits a county to reallocate unused funds at the end of each grant year and allows a grant recipient to carry over a certain amount of funds into a subsequent year. And it contends the Department has "superpowers" to move money between service categories during the last quarter of the grant year to ensure that all monies are spent. It submitted evidence that the Department reallocated $50,000 from one funding category to another in the second quarter of 2018, the previous grant year. It argues that it is thus "hypothetically possible" that there would be money available to fund AHF's requested relief.

But as of the date of summary judgment, AHF's belief that funds might become available was not supported by the evidence before the trial court. As Linda Coomas, the Department's Ryan White Part A program manager, explained, the allocation of Ryan White funding is set by an entity known as the HIV/AIDs Planning Council. This Planning Council is a volunteer body made up of service providers, people living with HIV, funders and other community members. It is the Planning Council, and not the Department, that determines how to expend any leftover funds after the application process is complete. The Department has no authority to transfer those funds from one funding category to another. Under 42 U.S.C. § 300ff-12(b)(4), the County, as a grant recipient of Ryan White funds, may not expend funds differently than decided by the statutorily required planning council.

As of July 2019, the Planning Council had completed its needs assessment and reallocated any leftover funds to other successful applicants in other service categories and Coomas testified that "there are no funds left over." AHF presented no evidence to create a genuine issue of material fact regarding the availability of any unallocated funds.[5] Because the record before the trial court undisputedly

---

[5] AHF submitted new evidence to the trial court with its motion for reconsideration and argued that this evidence demonstrates that the Department has funds to reallocate to existing approved contractors and could reopen the RFA process to unsuccessful applicants. But these materials were not considered by the trial court. In reviewing a summary judgment ruling, we consider only evidence called to the attention of the trial court. RAP 9.12. We therefore decline to consider the evidence AHF submitted in conjunction with the motion for reconsideration. We also note that AHF sought to include, and the Clerk of this court rejected, a designation of clerk's papers that included documents not a part of the trial court record. Rather than file a motion to modify this ruling, AHF attached these materials to its brief as Appendix A. AHF's actions constitute a violation of RAP 10.3(8) and we will not consider these documents. While we do not approve of AHF's actions, we decline the Department's invitation to impose sanctions under RAP 10.7.

established that there were no funds remaining to grant AHF's requested relief, the trial court did not err in concluding that AHF's case is moot.

AHF next contends that the public policy articulated in Dick Enterprises should not trump federal appropriations law under which courts have the equitable power to order the distribution of grant funds even after a grant period has lapsed. But none of the cases on which AHF relies actually support its argument here. AHF relies on County of Nassau v. Leavitt, 2009 WL 10703093 (E.D.N.Y. Mar. 31, 2009) (court order), in which New York's Nassau and Suffolk counties sued the U.S. Department of Health and Human Services (HHS) after HHS recategorized the counties for the purpose of receiving Ryan White funds, resulting in a lesser award for 2007 than the counties had received in 2006. Id. at *1. The counties sought to enjoin HHS from implementing the recategorization. Id. at *2. HHS moved to dismiss the suit as moot, arguing that the government no longer had funding available for the 2007 and 2008 fiscal years to provide the counties' requested relief. Id. The district court denied the motion to dismiss, holding that, although the fiscal year had ended and the record indicated that the relevant funds had been expended, the extreme consequences of holding that the counties' claims were moot necessitated further argument. Id. at *5.

After receiving additional briefing, and a declaration from Douglas H. Morgan, the director of the HHS division that administers the grant program, stating that "[n]o remaining . . . funds appropriated by Congress . . . are available for obligation by HHS" for the 2007 and 2008 fiscal years, the district court dismissed

- 10 -

the plaintiff's lawsuit as moot.  County of Suffolk v. Sebelius, 605 F.3d 135, 139 (2nd Cir. 2010).  The Second Circuit affirmed the dismissal.  Id. at 144.

Just as HHS did in Sebelius, the County's program coordinator testified that all of the Ryan White funds had been awarded and no funds remained to be allocated to AHF.  AHF provided no evidence to the contrary.  Sebelius thus supports the County's argument that AHF's claim is moot.

AHF's reliance on Nat'l Ass'n of Reg'al Councils v. Costle, 564 F.2d 583 (D.C. Cir. 1977), and Multnomah County v. Azar, 340 F. Supp.3d 1046 (D. Or. 2018), is similarly misplaced.  In Costle, the Environmental Protection Agency (EPA) had $150 million in contract authority to fund state cleanup activities under the 1972 Federal Water Pollution Control Act but obligated only $13 million by the end of the relevant fiscal year.  564 F.2d at 585-86.  The plaintiff sued to force the EPA to make the unobligated funds available; the EPA argued that the expiration of the fiscal year deprived it of the authority to obligate the funds.  Id. at 586.  The Circuit Court for the District of Columbia held that while a district court may use its equitable authority to order funds available at the time the lawsuit was brought to be kept available beyond the funding lapse of the relevant fiscal year, the case was properly dismissed because the plaintiff failed to bring suit before the end of the fiscal year and the funding lapsed.  Id. at 588-90.  Costle is clearly distinguishable because, unlike in Costle where $137 million in funds were available, there were no Ryan White funds available to AHF.

AHF's reliance on Azar is misplaced for the same reason.  In Azar, Multnomah County sued after HHS terminated its funding for state sex education

programs, despite receiving congressional appropriations for the funding program. 340 F. Supp. 3d at 1052-53. The court held that, because the county brought its suit before the end of the fiscal year, it had the authority to award appropriated funds to a successful litigant even after the statutory lapse date. Id. at 1054-55. But Congress did not appropriate any funds to AHF and, despite the fact that AHF brought suit before the end of the grant fiscal year, the County had no unobligated funds for a court to allocate to unsuccessful grant applicants. Neither case addresses what is at issue here: whether a trial court may compel a federal grant recipient to reallocate funds between unsuccessful and successful applicants after the County has executed valid contracts with the successful applicants. Dick Enterprises, and not federal appropriations case law, governs the answer to this question. The trial court did not err in dismissing AHF's complaint with prejudice.

C. Motion for Reconsideration

The trial court denied AHF's motion for reconsideration, concluding it lacked authority to entertain the motion without prior permission from this court. Although AHF assigned error to the trial court's ruling, it provides this court with no argument on the assignment of error. We therefore deem this argument to be abandoned.[6] See Brower v. Pierce County, 96 Wn. App. 559, 567, 984 P.2d 1036 (1999) (assigning error to denial of motion for reconsideration but failing to argue assignment of error constitutes abandonment of issue).

---

[6] We note that under RAP 7.2(e), a trial court has the authority to decide a motion for reconsideration after a notice of appeal has been filed but its decision has no legal effect unless the prevailing party files a motion with this court seeking permission for the decision to be formally entered. See 2A ELIZABETH A. TURNER, WASHINGTON PRACTICE: RAP 7.2, comment 6 (8th ed. 2020).

## CONCLUSION

When the Department executed contracts with successful applicants and obligated all of the Ryan White funds for the 2019 grant period, AHF's request for injunctive relief became moot and the trial court appropriately dismissed the case with prejudice under CR 56.

We affirm.

Andrus, A.C.J.

WE CONCUR: