# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| ALEXANDRIA REAL ESTATE EQUITIES, INC., a Washington State Taxpayer, JOHN JOSEPH COX, a Washington State Taxpayer, and DEAN A. TAKKO, a Washington State Taxpayer, | No. 57985-5-II |
| Appellants, | |
| v. | PUBLISHED OPINION |
| UNIVERSITY OF WASHINGTON, a Public Institution of Higher Education and Agency of the State of Washington. | |
| Respondent. | |

PRICE, J. — This case arises from a selection process used by the University of Washington (UW) to retain a real estate developer for a new building on its campus. The development plan involved a variation of a leaseback arrangement. UW proposed to enter an 80-year ground lease with a developer for the property. The developer, in turn, would demolish an existing building and construct the new one, incurring all of the costs. The developer would own the building for the 80-year duration of the ground lease, but UW would agree in advance to lease back a portion of the building space from the developer. At the end of the ground lease, the building's ownership would return to UW.

Alexandria Real Equities, Inc. (ARE) was one of the two finalists to negotiate for the development contract, but UW ultimately selected ARE's competitor.

No. 57985-5-II

Litigation resulted. At the superior court, ARE and two individual taxpayers asserted three claims against the university—(1) UW lacked authority to enter into this particular type of agreement, (2) UW failed to use a required competitive bidding procedure to select a developer, and (3) UW's selection process was arbitrary and capricious because it did not follow the selection process described in a request for developers' proposals. The superior court granted UW summary judgment on the first and second claims, and the third claim proceeded to a bench trial. Following the trial, the superior court dismissed ARE's third claim for lack of standing and because it concluded UW's selection process was not arbitrary and capricious. ARE appeals.

We affirm the superior court's summary judgment order because UW had authority to enter into the contracts with ARE's competitor and UW was not required to strictly adhere to a specific competitive bidding process. We also affirm the dismissal of ARE's third claim because ARE lacked standing for the claim.

FACTS

I. BACKGROUND

A. UW'S DEVELOPMENT PLANS

UW is a state university with a campus in Seattle and is governed by a "Board of Regents." In 2019, UW began its process to redevelop its West Campus (a 70-acre portion of its Seattle campus) to create an "innovation district." Clerk's Papers (CP) at 1458. UW wanted the new West Campus to serve as a central location for students and faculty in multiple fields to partner with businesses, government, nonprofit organizations, and the Seattle community to solve critical problems. UW created a 30-year plan to redevelop West Campus, with 19 locations identified for reconstruction.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 57985-5-II

The first site selected for reconstruction was site W27. The site is a 1.5-acre property, and its redevelopment is focused on clean energy science and technologies. The new building will "house UW faculty, students, classrooms[,] and research facilities, along with public and private sector tenants with compatible research and technologies." CP at 96. UW intends for the building to "[f]acilitate[] multidisciplinary academic and professional exploration," "[p]rovide[] students with immersive and experiential learning environments," and "enhance[] strong connections between UW faculty, staff[,] and students with external partners to expand the impact of UW research, teaching/learning[,] and public service activities." CP at 98. The construction of the new building will utilize a "ground lease development structure" that UW had previously used for other projects outside of West Campus. CP at 161.

Under the ground lease development structure, UW executes a long-term, 80-year ground lease to the developer. The developer then demolishes the existing building and designs, finances, and constructs the new building. The developer owns the building for the term of the ground lease, bearing full responsibility for project risks and costs. Throughout the duration of the ground lease, UW agrees to lease approximately 30,000 square feet (about 9 percent) of the new building at a fixed rate. UW also has the option to lease an additional 70,000 square feet, which would bring its total usage of the building to about 30 percent. The remainder of the building is leased to non-UW tenants, but with certain restrictions—the tenants must be "private and public tenants that have activities, research[,] and/or products focused on sustainable solutions and [that] are complementary with the UW's education and research mission." CP at 107. At the end of the 80-year duration, the developer returns ownership of the building to UW.

3

No. 57985-5-II

To begin the construction process, UW hired Jones Lang LaSalle Americas, Inc. (JLL), a firm that helps public entities with development solutions, to provide real estate services for the site W27 development. JLL created a general procedure for the site W27 development, involving a two-step process for selecting a developer. First, a "Request for Qualifications" (RFQ) would solicit potential developers. Second, the responding developers with the best overall proposals would be invited to participate further with a "Request for Proposals" (RFP).

In January 2020, UW posted the RFQ for development of site W27, including the details about the proposed ground lease development structure. UW received responses from 11 developers. UW selected four of the developers to participate in the next-step RFP process, two of which were ARE and Wexford Science & Technology, LLC (Wexford).

The RFP provided to the selected developers described UW's intent to negotiate the ground lease development structure. The RFP stated that UW "may elect to work directly with [the] Developer on other similar projects in the future without further competitive requests for proposals." CP at 109. Additionally, the RFP explained that the developers' proposals would be evaluated and scored by UW's evaluators, called the "Slating Committee," "based on the criteria identified in [the] RFP." CP at 126.

UW received proposals from three developers, including ARE and Wexford. The developers were able to submit questions to UW as part of the negotiation process; one developer asked UW to "describe any associated scoring, ranking, or numerical weights assigned to the criteria." Ex. 66, at 3. In response, UW issued an addendum to the RFP, stating it would evaluate the proposals for specified criteria in the RFP, but would not at that time indicate weight or importance of the items. UW's Slating Committee reviewed the proposals and conducted

4

No. 57985-5-II

interviews but did not use actual scorecards for the different developers. Ultimately, UW selected Wexford as the developer for site W27.

### B. UW/WEXFORD LEASES

UW began negotiating the leases for the development with Wexford. Wexford won the bid to be the developer, leading UW to execute the contracts with Wexford's related entity, LS W27 JV, LLC (LS W27)[1]. The parties signed an initial agreement to lease in March 2022. The subsequent ground and building leases were signed in May 2022.

The ground lease required Wexford to design, finance, construct, and maintain the facility. The companion building lease then required Wexford to lease 100,000 square feet of building space back to UW. The ground lease self-executes upon "closing," which is dependent on certain conditions precedent. The only relevant condition precedent is the absence of litigation that would prevent UW or Wexford from performing under the leases. The building lease self-executes when the building is substantially completed.

### C. ARE'S SUBSEQUENT ACTIONS

When ARE learned Wexford had been selected as the site W27 developer, its lawyer wrote to UW's President questioning the "methodology and objectivity of the RFP process." CP at 153. The letter requested that UW reconsider and select ARE instead. UW declined.

ARE and its Senior Vice President, John Cox, then sent letters to the Washington State Attorney General asserting that the RFP selection process was illegal and requesting the attorney

---

[1] Wexford had a five percent equity interest in LS W27.

No. 57985-5-II

general "enjoin the execution/performance of the illegal [c]ontracts." CP at 769. The attorney general declined to respond.

II. ARE'S COMPLAINTS AND UW'S MOTION FOR SUMMARY JUDGMENT

In June 2021, ARE, together with two individual taxpayers, Cox (in his individual capacity) and former state legislator Dean Takko, filed a lawsuit against UW, asserting two claims.[2] ARE's first claim (Claim 1) contended UW lacked authority to enter into the leases for site W27. ARE's second claim (Claim 2) alleged UW failed to use competitive bidding procedures required under public works law.

UW moved for summary judgment on both of ARE's claims in August 2021. UW asserted it had general authority to enter into the leases through several different statutes, including RCWs 28B.20.130, 28B.140.010, and 28B.10.300. UW also argued the building's construction was not a public work because UW was not incurring construction costs and, therefore, the statutory competitive bidding process did not apply.

While UW's summary judgment motion was pending, ARE filed an amended complaint adding a third claim (Claim 3). ARE's Claim 3 asserted that UW's developer selection process was arbitrary and capricious.

The superior court granted UW's summary judgment motion and dismissed Claims 1 and 2.[3] Claim 3 remained.

---

[2] Although ARE, Cox, and Takko were plaintiffs as to all claims, we refer to the plaintiffs collectively as ARE for brevity.

[3] ARE filed a supplemental declaration on January 4, 2022, with additional evidence it wanted the superior court to consider for summary judgment. The supplemental declaration included exhibits with information about postconstruction costs UW will incur while renting building space from

No. 57985-5-II

III. BENCH TRIAL

ARE and UW proceeded to a bench trial on Claim 3.[4]  After hearing testimony from numerous witnesses and considering over 100 exhibits, the superior court rejected ARE's Claim 3.  The superior court determined that ARE lacked standing to pursue Claim 3 and further determined UW was not arbitrary and capricious in its selection of Wexford.

The superior court entered lengthy findings of fact.  In ruling for UW, the superior court determined that ARE lacked standing as a disappointed bidder and as a taxpayer.  Findings of fact relevant to those decisions included the following:

> 34.  UW and Wexford have executed the contracts (the Amended and Restated Agreement to Lease, the Ground Lease, and the Building Lease, collectively the Leases) that were procured and negotiated in connection with the Site W27 development.
>
> . . . .
>
> 36.  The Leases are self-executing and require UW and Wexford to "close" on the transaction subject to certain Conditions Precedent.  The Ground Lease commences upon "Closing" and the Office Lease commences upon substantial completion of the Site W27 Facility.
>
> 37.  The only relevant "Condition Precedent" provides that UW and Wexford's obligations are conditioned on there being no litigation that would affect UW's or Wexford's ability to perform.
>
> . . . .
>
> 39.  [ARE] presented evidence at trial as to the costs incurred in responding to the W27 RFP and anticipated profits that it believes it would have earned had it been selected as the W27 developer.

---

Wexford.  UW objected to consideration of the evidence because it was not timely filed in accordance with CR 56.  The superior court agreed and did not consider the declaration.

[4] Only ARE, the company, participated in the bench trial because the superior court had previously dismissed Cox and Takko from Claim 3 based on standing.

No. 57985-5-II

CP at 1469-70.

Conclusions of law relevant to the superior court's standing decisions included the following:

1. The Court concludes that [ARE] lacks standing to pursue its claim in this matter, both as a disappointed bidder and as a taxpayer, as follows:

2. The Court concludes that [ARE] lacks standing as a disappointed bidder to pursue its claims. Under Washington law, a bidder loses standing to pursue claims concerning the procurement of a public project once the contracts at issue have been executed. *Dick Enterprises, Inc. v. Metro. King County,* 83 Wn. App. 566, 572, 922 P.2d 184 (1996). A disappointed bidder's sole remedy under Washington law is to sue to enjoin execution of the contract at issue in the procurement.

. . . .

4. The Court concludes that the Leases bind UW and Wexford to the terms of the proposed W27 development, subject only to a litigation contingency that allows Wexford to terminate the Amended and Restated Agreement to Lease.

5. Any remaining or future agreements or contracts between UW and Wexford associated with Site W27 development flow from the agreement that has already been signed. [ARE] lacks disappointed bidder standing to challenge such contracts to the extent they flow from any agreements related to Site W27 in existence at the time of trial.

. . . .

7. The Court concludes that [ARE] lacks standing as a Washington State taxpayer to pursue its claims because it has failed to establish that it has incurred any "special injury" beyond that suffered by any other Washington taxpayer.

8. The evidence of injury or damages presented by [ARE] included costs incurred in responding to the RFP and selection process and the alleged loss of its anticipated profits. These alleged losses or damages are only associated with [ARE] not being selected as the developer for the W27 project.

CP at 1470-72. Thus, Claim 3 was dismissed.

8

No. 57985-5-II

ARE appeals the summary judgment order dismissing Claims 1 and 2 and the conclusions of law dismissing Claim 3.[5]

## ANALYSIS

### I. CLAIMS 1 AND 2 WERE PROPERLY DISMISSED ON SUMMARY JUDGMENT

ARE challenges the superior court's dismissal of Claims 1 and 2 at summary judgment. For Claim 1, ARE argues UW did not have statutory authority to enter into a transaction under the ground lease development structure. For Claim 2, ARE asserts, even if UW had authority to enter into the transaction, UW failed to comply with the statutory bidding procedures required for selecting a developer. We affirm the superior court on both claims.

#### A. SUMMARY JUDGMENT STANDARD OF REVIEW

We review a superior court's grant of summary judgment de novo. *Crisostomo Vargas v. Inland Wash., LLC*, 194 Wn.2d 720, 728, 452 P.3d 1205 (2019). Summary judgment may be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 287, 481 P.3d 1084 (2021). A genuine issue of material fact exists if reasonable minds could disagree on the conclusion of a factual issue controlling the outcome of the litigation. *Sartin v. Estate of McPike*, 15 Wn. App. 2d 163, 172, 475 P.3d 522 (2020), *review denied*, 196 Wn.2d 1046 (2021). When determining whether to grant summary judgment, we view all facts and inferences in the light most favorable to the nonmoving party. *Id*.

---

[5] As noted above, the superior court had previously dismissed Cox and Takko for Claim 3 based on standing. Because that order has not been appealed, only ARE, the company, remains an appellant for Claim 3.

No. 57985-5-II

B. CLAIM 1—UW HAD AUTHORITY TO ENTER TRANSACTION

ARE argues UW had no authority to enter into transactions arising from a ground lease development structure. UW responds by claiming statutory authority from three individual statutes—RCW 28B.20.130, RCW 28B.10.300, and RCW 28B.140.010. We determine that RCW 28B.20.130 grants UW the authority to enter into the transaction with Wexford.

The legislature has granted broad authority to UW for managing its own property. Indeed, chapter 28B.20 RCW applies exclusively to UW and grants the UW Board of Regents expansive powers under statute. *See* RCW 28B.20.020. Relevant here, RCW 28B.20.130 provides the Board of Regents with "[g]eneral powers and duties," including the grant of "full control of the university and its property of various kinds, except as otherwise provided by law." RCW 28B.20.130(1).

ARE appears to agree that RCW 28B.20.130 grants broad power to UW. But ARE focuses on the statute's language, "except as otherwise provided by law," and contends the language has been interpreted to limit UW's "full control" when there is an applicable statute. *See Univ. of Wash. v. City of Seattle*, 188 Wn.2d 823, 832-33, 399 P.3d 519 (2017); RCW 28B.20.130.

For this case, ARE argues there is such a statute—RCW 28B.10.300—that limits UW's authority to engage in this project. RCW 28B.10.300 generally applies to all state universities in Washington, not just UW, and authorizes them to enter ground lease transactions for eight specific building types. The statute permits boards of regents for various state universities to enter into contracts for:

10

No. 57985-5-II

> [T]he construction, installation, equipping, repairing, renovating and betterment of buildings and facilities for the following:
>
> (a) Dormitories
>
> (b) Hospitals
>
> (c) Infirmaries
>
> (d) Dining halls
>
> (e) Student activities
>
> (f) Services of every kind for students, including, but not limited to, housing, employment, registration, financial aid, counseling, testing and offices of the dean of students
>
> (g) Vehicular parking
>
> (h) Student, faculty and employee housing and boarding[.]

RCW 28B.10.300(1). Such contracts include leases. RCW 28B.10.300(3).

ARE contends the site W27 building does not fall into any of these eight building types. And because this project falls outside of the eight building types specifically permitted by RCW 28B.10.300, ARE argues this statute operates to limit UW's very general authority under RCW 28B.20.130. In other words, the limitation of distinct building types in RCW 28B.10.300 constitutes the "except as otherwise provided by law" limitation in RCW 28B.20.130.

UW disputes this argument. UW acknowledges the limitation from the "except as otherwise provided by law" clause, but argues that RCW 28B.10.300 is not the type of statute that limits its authority under RCW 28B.20.130. According to UW, RCW 28B.10.300 *grants* power to public universities to enter into agreements, not *limits* their power to enter into them. One statute granting authority to all Washington universities cannot operate to limit UW's broader grant of

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 57985-5-II

authority in a separate statute. UW essentially argues two positive grants of authority cannot limit one another.

UW's position is persuasive. RCW 28B.10.300 provides state universities the authority to enter into certain transactions, but it does not, on its face, prohibit universities from entering into any transactions. Moreover, there is no language in the statute indicating that the eight building types are the entire universe of permitted building types for which universities may contract; the statute, for example, does not state that universities are *only* authorized to contract for the enumerated building types. Without some language in RCW 28B.10.300 more overtly enacting a limitation on the authority of the universities, rather than merely acting as a grant of authority, the statute cannot be reasonably seen as functioning as an "except as otherwise provided by law" limitation of the broad authority given to UW from RCW 28B.20.130. Simply put, both statutes *grant* UW authority to manage its property holdings. *See Hood Canal Sand & Gravel, LLC v. Goldmark*, 195 Wn. App. 284, 300, 381 P.3d 95 (2016) (determining chapters that individually granted DNR "expansive authority to grant easements" and "certain narrow authority . . . to grant easements" did not conflict). Thus, RCW 28B.10.300 does not limit UW's broad authority to enter into property lease agreements.

UW's ability to control its property under RCW 28B.20.130, while not limitless, is broad. ARE fails to cite any law that prevents this broad grant of authority from permitting the

No. 57985-5-II

development structure chosen for site W27.[6]  Thus, the superior court properly dismissed

Claim 1.  We affirm the superior court.[7]

      C.  CLAIM 2—COMPETITIVE BIDDING REQUIREMENTS DO NOT APPLY

ARE's Claim 2 is related to competitive bidding laws.  ARE argues that assuming UW has

the authority to enter into the development structure, UW failed to follow competitive bidding

procedures required by law.  ARE asserts that because UW will incur costs associated with the

new site W27 building, it is a public work that requires competitive bidding.  ARE contends that

because the bidding for the development did not comply with these laws, UW's transactions with

Wexford are ultra vires and void.  We disagree.

Generally, public policy favors competitive bidding laws in Washington.  *See Manson*

*Constr. & Eng'g Co. v. State*, 24 Wn. App. 185, 190, 600 P.2d 643 (1979), *review denied*, 93

Wn.2d 1004 (1980).  Thus, even if a construction contract is within an agency's general authority,

noncompliance with statutorily mandated procedures is ultra vires and renders the contract void.

*Failor's Pharmacy v. Dep't of Soc. & Health Servs.*, 125 Wn.2d 488, 499, 886 P.2d 147 (1994);

*see also Bankston v. Pierce County*, 174 Wn. App. 932, 939, 301 P.3d 495 (2013) ("When a public

---

[6] ARE contends that such a broad reading of RCW 28B.20.130 would make RCW 28B.10.300 superfluous.  But considering the breadth of the grant of authority in RCW 28B.20.130, coupled with very general language of the exception—"except as otherwise provided by law"—we are persuaded that the legislature has the prerogative to provide clear authorization for the specific projects listed in RCW 28B.10.300 without eviscerating the broad authority of RCW 28B.20.130.

[7] UW also asserts that RCW 28B.10.300 and RCW 28B.140.010 each independently grant it power to enter into the transaction with Wexford.  Because UW has authority under RCW 28B.20.130, we do not consider the breadth of any additional authority provided to UW by these other statutes.

No. 57985-5-II

body makes a contract in violation of competitive bidding laws, the contract is illegal and imposes

no obligation on the public body.").

State universities are required to comply with competitive bidding procedures under certain

circumstances. *See* Former RCW 28B.10.350 (2009); *A-Line Equip. Co. v. Lower Columbia Coll.*,

49 Wn. App. 217, 219, 741 P.2d 1057 (1987). Former RCW 28B.10.350 requires competitive

bidding when a state university will incur over $90,000 of costs for construction:

> (1) When *the cost* to . . . any regional or state university of any *building, construction, renovation, remodeling*, or *demolition*, *other than maintenance or repairs*, will equal or exceed the sum of ninety thousand dollars, . . . complete plans and specifications for the work shall be prepared, the work shall be put out for public bid, and the contract shall be awarded to the responsible bidder who submits the lowest responsive bid.

(Emphasis added.) But if the construction is not being done at the cost of the university, then the

construction is not for a public work and the statute would not apply. *See* Former RCW

28B.10.350(4) ("Where the estimated cost . . . is less than ninety thousand dollars . . . the

publication requirements of RCW 39.04.020 [(requiring public bidding for public works)] do not

apply.").

ARE argues that former RCW 28B.10.350 applies here because the cost of the construction

is actually being paid in part by UW. As noted above, the development structure requires the

developer to fully fund the demolition and construction costs of the building in exchange for UW's

promise in advance to commit to a long-term lease of space. ARE contends UW's promised rent

payments mean the construction is actually being done at the "cost" of UW.[8] Essentially, ARE

---

[8] In support of this argument, ARE cites to its supplemental declaration, which the superior court declined to consider below because it was not filed in accordance with CR 56. ARE argues we should consider the declaration evidence because it is "appropriately part of the record for this

14

No. 57985-5-II

argues that the millions of promised dollars that will be spent in rent are so closely tied to demolition and construction at site W27 that they must be considered payment for the cost of construction. If so, then former RCW 28B.10.350 applies and competitive bidding was required.

ARE supports its argument with this court's decision in *Supporters of the Center, Inc. v. Moore*, 119 Wn. App. 352, 80 P.3d 618 (2003). In *Supporters*, a nonprofit community group was running out of money and struggling to complete a civic performing arts center when the project received an infusion of funds from both a state agency and the city. *Id.* at 354-56. The city offered its funding through an advance of rent payments—rent that the city initially expected to pay later, only after construction was completed. *Id.* at 360. In the context of a prevailing wage dispute, this court held that this public funding, including the advance of city rent payments, made the performing arts center a public work, constructed " 'at the cost' " of public entities. *Id.* at 360 (quoting RCW 39.04.010). ARE contends that *Supporters* stands for the proposition that UW's promised rent payments should be deemed payment for costs for construction.

ARE also argues the legislature has identified rent as a cost in relation to real property acquisition, citing RCW 28B.10.300(5). That provision states that boards of regents for state universities are authorized to:

> Contract to pay as *rental* or otherwise the *cost* of the acquisition of such lands and of the construction and installation of such buildings and facilities *on the amortization plan*[.]

RCW 28B.10.300(5) (emphasis added).

---

appeal and . . . it was presented to (and called to the attention of) the [superior] court." Appellants' Opening Br. at 20 n.8. The declaration appears to merely include additional postconstruction rent figures and anticipated maintenance costs. Because the supplemental declaration, even if it is considered, does not change our analysis, we decline to further address this issue.

No. 57985-5-II

ARE's position is unpersuasive. First, *Supporters* does not have application here. The circumstances are not similar; UW is not making any *advanced* rent payments to actually fund the building's demolition or construction. The developer for site W27 will pay the demolition and construction costs in their entirety.

Second, RCW 28B.10.300(5) is similarly inapplicable. This provision narrowly pertains to the acquisition of buildings and facilities *on an amortization plan*. ARE fails to explain how this apparent application can be broadly construed to equate lease payments to costs of construction in the general sense—especially when the statute does not have any relation to competitive bidding laws.

Although UW has committed to spending public funds in leasing space at the new building, the funds will be paid as rent only *after all construction is completed*; the building lease self-executes when the building is substantially complete. UW will not incur any risk for the building or costs for the stated construction activities—all those costs are incurred by the developer, as is the nature of the ground lease development structure. Because UW will not incur any costs for, or closely associated with, "building, construction, renovation, remodeling, or demolition," former RCW 28B.10.350(1) and its competitive bidding requirements do not apply.

In short, ARE's Claim 2 fails; UW was not required to use competitive bidding procedures under former RCW 28B.10.350. We affirm the superior court's dismissal of this claim.

II.  CLAIM 3—SUPERIOR COURT DID NOT ERR WHEN IT RULED FOR UW

ARE's Claim 3 alleged that assuming UW had the authority to enter the development structure and assuming competitive bidding laws did not apply, UW's developer selection process

16

No. 57985-5-II

was arbitrary and capricious. After an extensive bench trial, the superior court determined that ARE did not have standing to pursue this claim.[9]

ARE argues the superior court erred and it had standing both as a disappointed bidder and a taxpayer.[10] We hold that ARE did not have standing for Claim 3.

A. LEGAL PRINCIPLES

On appeal, we review the superior court's findings of fact after a bench trial for substantial evidence. *Harrison Mem'l Hosp. v. Gagnon*, 110 Wn. App. 475, 485, 40 P.3d 1221, *review denied*, 147 Wn.2d 1011 (2002). Unchallenged findings of fact are verities on appeal. *Harris v. Urell*, 133 Wn. App. 130, 137, 135 P.3d 530 (2006), *review denied*, 160 Wn.2d 1012 (2007).

We review conclusions of law de novo to determine if they are supported by the findings of fact. *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 342, 308 P.3d 791 (2013), *review denied*, 179 Wn.2d 1011 (2014).

B. ARE DID NOT ESTABLISH STANDING AS A DISAPPOINTED BIDDER

ARE first argues it has standing for Claim 3 as a disappointed bidder. We disagree.

A disappointed bidder may pursue injunctive relief before contract formation based on disappointed bidder standing. *BBG Grp., LLC v. City of Monroe*, 96 Wn. App. 517, 519-20, 982 P.2d 1176 (1999). However, a disappointed bidder loses standing once the contracts at issue

---

[9] The superior court also determined, substantively, that UW's developer selection process was not arbitrary and capricious. But because the superior court's decision on standing, if not error, would be dispositive, we limit our discussion to that aspect of the superior court's decision.

[10] ARE challenges the superior court's conclusions of law, but notably does not assign error to any of the superior court's findings of fact.

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 57985-5-II

have been executed. *Dick Enterprises*, 83 Wn. App. at 571. Contract formation is the "bright-line cutoff point." *Id.* at 571.

ARE has two main arguments about its disappointed bidder standing. ARE first asserts that it did not lose its disappointed bidder status because of the post-award switch in the identity of the developer. ARE points out that UW has not actually executed contracts for the site W27 development with Wexford, but with a different corporate entity, LS W27, in which Wexford has a five percent equity interest. Thus, ARE argues the contracts resulting from the RFP have not been executed and it retains disappointed bidder standing.

Second, ARE argues that it maintains disappointed bidder standing because the "Agreement to Lease" (Ex. 157) requires additional documents be completed before the overall transaction can close. ARE does not explain what documents still need to be completed but argues that those documents and a monetary deposit must be placed in escrow prior to closing.

ARE's first argument about the identities of the contracting parties fails. The superior court's findings of fact clearly found no relevance to the differences in the corporate forms of Wexford and LS W27. The superior court's findings of fact stated that Wexford remained the party that was entering the agreements with UW. CP at 1469 ("UW and Wexford have executed the contracts (the Amended and Restated Agreement to Lease, the Ground Lease, and the Building Lease, collectively the Leases) that were procured and negotiated in connection with the Site W27 development."). Because ARE has not assigned error to any of the superior court's findings of fact, they are verities on appeal. *Harris*, 133 Wn. App. at 136. Because we apply these unchallenged findings of fact to the conclusions of law, any alleged factual differences in the corporate forms of the contracting parties are irrelevant on appeal. *See id*. Thus, ARE's

18

No. 57985-5-II

disappointed bidder standing cannot be maintained based merely on UW's contract execution with

LS W27 instead of Wexford.

Similarly, ARE's second argument about the alleged non-finalization of the contracts also

fails. The superior court explicitly included in its findings of fact that "UW and Wexford have

executed the contracts . . . that were procured and negotiated in connection with the Site W27

development." CP at 1469. ARE did not challenge this finding of fact, thus again, it is a verity.

*Harris*, 133 Wn. App. at 136. Using these findings, the superior court made the following

conclusions of law, rejecting the argument that something further had to happen before the

contracts would be deemed executed:

> 4. The Court concludes that the Leases bind UW and Wexford to the terms of the
> proposed W27 development, subject only to a litigation contingency that allows
> Wexford to terminate the Amended and Restated Agreement to Lease.
>
> 5. Any remaining or future agreements or contracts between UW and Wexford
> associated with Site W27 development flow from the agreement that has already
> been signed. [ARE] lacks disappointed bidder standing to challenge such contracts
> to the extent they flow from any agreements related to Site W27 in existence at the
> time of trial.

CP at 1471.

Although ARE is correct that some additional documents and agreements may be necessary

before this development is completed, the main contracts for the development that ARE fought to

be the developer for—the agreement to lease, the ground lease, and the building lease—have all

been sufficiently signed and completed. Even if the contracts are deemed to "self-execut[e]" at a

later time or require other documents and actions to later be completed, the *parties* have already

executed the contracts. CP at 1470. Simply put, ARE does not have disappointed bidder standing

19

No. 57985-5-II

because it did not bring its suit prior to the "bright-line cutoff point." *Dick Enterprises*, 83 Wn. App. at 571.

The superior court's findings of fact sufficiently support its conclusion of law that ARE lacks standing as a disappointed bidder for Claim 3.

C.  ARE DID NOT ESTABLISH STANDING AS A TAXPAYER

ARE also argues it had standing to bring Claim 3 because it had standing as a taxpayer. We disagree and hold that the superior court's findings of fact support its conclusion of law that ARE lacked taxpayer standing.

When challenging a government entity's discretionary acts, as opposed to allegedly unlawful acts, a taxpayer can establish standing by demonstrating: (1) taxpayer status, (2) a prior demand of the attorney general, and (3) a special injury. *See Friends of N. Spokane County Parks v. Spokane County*, 184 Wn. App. 105, 120-22, 336 P.3d 632 (2014). A "special injury" is not required for taxpayer standing when a government's allegedly unlawful act is being challenged. *Id.* at 122.

To show a "special injury," the taxpayer " 'must show that [it] has a unique right or interest that is being violated, in a manner special and different from the rights of other taxpayers.' " *Id.* at 120 (quoting *Am. Legion Post No. 32 v. City of Walla Walla*, 116 Wn.2d 1, 7, 802 P.2d 784 (1991)); *Greater Harbor 2000 v. City of Seattle*, 132 Wn.2d 267, 281, 937 P.2d 1082 (1997). "The taxpayer must show that the action complained of interferes with the taxpayer's legal rights or privileges." *Greater Harbor 2000*, 132 Wn.2d at 281-82. Generally, the special injury must have a causal link between the use of the taxes and the government's discretionary action. *See generally* 74 AM. JUR. 2d *Taxpayers' Actions* § 26 (2d ed. 2023) (explaining that a special injury is a "special

20

No. 57985-5-II

interest in the taxation-derived fund by reason of which the taxpayer's own property rights are put in jeopardy"); *cf. Dick Enterprises*, 83 Wn. App. at 573 (disappointed bidder did not have taxpayer standing when it "d[id] not allege harm to taxpayers"); *cf. Am. Legion Post No. 32*, 116 Wn.2d at 8 (party lacked taxpayer standing when it "provide[d] no argument demonstrating it has a unique legal right or privilege different from other taxpayers that was violated by Walla Walla's levy and subsequent use of the . . . tax").

Here, after the bench trial, the superior court concluded that ARE's alleged damages did not qualify as a "special injury." The superior court's findings of fact included that "[ARE] presented evidence at trial as to the costs incurred in responding to the W27 RFP and anticipated profits that it believes it would have earned had it been selected as the W27 developer." CP at 1470. ARE has not assigned error to this finding, and it is therefore a verity on appeal. *Harris*, 133 Wn. App. at 136.

Using this finding of fact, the superior court concluded that ARE's only damages were those that were associated with being a disappointed bidder in the RFP selection process, not as a taxpayer with a special injury. The superior court's conclusions of law included:

> 7. The Court concludes that [ARE] lacks standing as a Washington State taxpayer to pursue its claims because it has failed to establish that it has incurred any "special injury" *beyond that suffered by any other Washington taxpayer*.
>
> 8. The evidence of injury or damages presented by [ARE] included costs *incurred in responding to the RFP and selection process and the alleged loss of its anticipated profits. These alleged losses or damages are only associated with [ARE] not being selected as the developer for the W27 project*.
>
> 9. *[ARE] fails to establish any injury to taxpayers generally from the UW's selection of Wexford's bid.* After an extensive process, the UW decisionmakers determined that the Wexford proposal was more financially advantageous. *Plaintiff has not established a special injury as a taxpayer*.

21

No. 57985-5-II

CP at 1472 (emphasis added).

ARE challenges these conclusions of law, arguing it may establish its taxpayer standing because it did sustain a special injury—injuries as a disappointed bidder. ARE claims Washington law supports its position that, if it is a taxpayer, its damages as disappointed bidder *can* constitute special injury. ARE states, "Washington courts reject additional requirements for such disappointed bidders that are also Washington taxpayers, and as such enables those disappointed bidders to continue to challenge a procurement decision based on their taxpayer standing even after contract execution." Appellants' Opening Br. at 54 (emphasis omitted). ARE argues it can show it had a special injury by "demonstrating that the government act has a connection to the use of state appropriated funds (e.g., state tax dollars being used in connection with the project)." Appellants' Opening Br. at 53. For these assertions, ARE cites *Friends of North Spokane County Parks*, 184 Wn. App. 105, and *Dick Enterprises*, 83 Wn. App. 566.

Neither case supports ARE's position. In *Dick Enterprises*, a taxpayer/disappointed bidder brought suit against a contractor when another bidder was selected, after the contract for services was executed. 83 Wn. App. at 569-70. The court held the disappointed bidder was too late to qualify for disappointed bidder standing. *Id.* at 572. But the disappointed bidder also argued it should have taxpayer standing because it would otherwise "irretrievably lose its rights to contract as the . . . bidder on the project." *Id.* at 573 (internal quotation marks omitted). In rejecting that argument, the court determined the disappointed bidder also lacked taxpayer standing because it failed to adequately invoke taxpayer standing in its pleadings. *Id.* But nothing in the case supports

22

No. 57985-5-II

ARE's assertion that damages as a disappointed bidder can constitute special injury for the purposes of establishing taxpayer standing.[11]

Similarly, *Friends of North Spokane County Parks* does not help ARE. *Friends* discusses and examines the *Dick Enterprises* decision, but it contains no discussion about the relationship between disappointed bidder status and the special injury necessary for standing as a taxpayer to challenge discretionary governmental decisions. 184 Wn. App. at 118. *Friends* is of marginal relevance, in any event, because the case involved an allegation of "unlawful" governmental action which, unlike discretionary governmental action, does not require special injury to obtain taxpayer standing. *Id.* at 122, 124.

None of the cases cited by ARE support its argument that disappointed bidder damages alone can constitute special injury for tax payer standing for discretionary governmental decisions. We presume that no such Washington cases exist. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). Thus, ARE fails to show that damages incurred solely as a disappointed bidder,

---

[11] ARE also cites to *Dick Enterprises* to argue that a special injury can be shown by "demonstrating that the government act has a connection to the use of state appropriated funds (e.g., state tax dollars being used in connection with the project)." Appellants' Opening Br. at 53. And again, ARE is mistaken; ARE's citation to *Dick Enterprises* is to the part of the opinion analyzing whether the plaintiff had standing as a disappointed bidder, which has no relevance to whether a connection between government acts and the use of state appropriated funds shows special injury for *taxpayer standing*. Indeed, such an injury would not be "special," but a general injury applicable to ARE and to all other taxpayers. *See Greater Harbor 2000*, 132 Wn.2d at 281 (" '[T]he taxpayer must show . . . a unique right or interest that is being violated, in a manner special and different from the rights of other taxpayers.' ") (second alteration in original) (quoting *Am. Legion Post No. 32*, 116 Wn.2d at 7)).

23

No. 57985-5-II

even if that bidder is a taxpayer, are within the category of damages that create "special injury" necessary for taxpayer standing.

Indeed, such a holding would create a loophole for disappointed bidders (who also happen to pay taxes) when they miss the deadline to challenge a bid decision. As explained above, disappointed bidders are barred from challenging the result of a competitive bid after the contracts for the bids have been executed. *Dick Enterprises*, 83 Wn. App. at 571-72. *Dick Enterprises* explains that post-contracting relief for disappointed bidders competes with the public interest of preventing excessive taxation. *Id.* at 569, 572 ("[E]ven where the wrongful award of a contract violates a bidder's interest in a fair forum, the bidder may not sue for damages. To allow damages would violate the public interest by subjecting taxpayers to further penalties when they are already injured by paying too high a price under an illegal contract."). Such a loophole allowing standing for all disappointed bidders who are also taxpayers would utterly frustrate the policies behind cutting off disappointed bidder standing at the time of contract execution.

With these principles in mind, we hold that damages as a disappointed bidder alone, without more, are not sufficient to show special injury for taxpayer standing.

At the end of the day, ARE has only shown damages that can be fairly categorized as disappointed bidder damages. And apart from those damages, ARE has failed to articulate any possible damages that would not also be suffered by all taxpayers. Such damages, if any, would not be a special injury. Thus, ARE lacks standing as a taxpayer for Claim 3.

Because ARE did not have either disappointed bidder standing or taxpayer standing, the superior court did not err by dismissing ARE's Claim 3.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 57985-5-II

CONCLUSION

We hold the superior court did not err when it granted summary judgment on Claims 1 and 2. We also hold the superior court's conclusions of law determining ARE lacked standing and dismissing ARE's Claim 3 are supported by the findings of fact. Accordingly, we affirm the superior court.

_____
PRICE, J.

We concur:

_____
MAXA, P.J.

_____
VELJACIC, J.

25